*In re* LIC. LUIS ENRIQUE VARGAS SOTO, querellado.

*Número:* O-78-52      *Resuelto:* 27 de febrero de 1979

*Juan G. Rivera Pagán, A. J. Amadeo Murga, Ismael Febres Nieves, Angel L. Valencia Valle, Roberto Clemente Colón, Porfirio Reyes Alvarez, José L. Feliú Pesquera, Ismael Cuevas Velázquez* y *Enrique González,* abogados del querellado;

*Héctor A. Colón Cruz, Procurador General,* y *Eliadis Orsini Zayas, Procurador General Auxiliar,* abogados de El Pueblo.

I

PER CURIAM: De la prueba practicada ante nuestro Comisionado Especial, el ex-juez Sr. Charles H. Juliá, y anteriormente en el pleito de *injunction* Civil Núm. CS-72-4317 ante el Juez Sr. José F. Rodríguez Rivera del Tribunal Superior, Sala de Bayamón, promovido por Aurelio Rodríguez Molina contra el Director de la Lotería, con intervención de William Flores Torres y otros, resultó probado que el agente de lotería Fidel Andino Peña vendió el 21 de agosto de 1972 al demandante Rodríguez Molina seis billetes para el sorteo extraordinario del 4 de octubre siguiente, entre ellos, el Núm. 28,146 que salió como segundo premio con valor de $100,000. Tres días después, el 24 de agosto de 1972 Aurelio Rodríguez fue asaltado y robado de éstos y otros billetes en las inmediaciones del Centro Médico (Río Piedras), lo que informó el mismo día a la Policía y al Negociado de la Lotería, faltando 6 semanas para el sorteo. Tres semanas después del sorteo, el 24 de octubre de 1972 el agente Andino Peña prestó declaración jurada ante el notario Sr. Raúl Méndez Feliciano en que dice haber vendido el 28 de septiembre anterior a William Flores Torres 14 billetes para el citado sorteo, entre ellos el Núm. 28,146 premiado con los $100,000.00. El caso de *injunction* terminó por sentencia de 27 de noviembre de 1973, en la que se ordenó por la Sala de Bayamón al Director de la Lotería pagar los billetes premiados Núms. 28,146 y 31,445 (éste con $400) al comprador Aurelio Rodríguez Molina, después de consignar el juez en sus determinaciones que no le mereció crédito el testimonio de Andino Peña y que "el demandante Aurelio Rodríguez estableció su derecho en esta controversia con una precisión casi matemática." (Opinión pág. 8). Resuelto el pleito, Andino Peña se querelló contra el abogado del demandante victorioso, Lic. Luis Enrique Vargas Soto

imputándole que el 15 de agosto de 1973, le había visitado en su casa en compañía del demandante Aurelio Rodríguez ofreciéndole dinero a cambio de que firmara una declaración donde constaba que le había vendido a Aurelio el billete que resultó segundo premio. Sobre dicha imputación se formuló el Primer Cargo de la querella sobre conducta profesional basada en infracción de los Cánones 18, 5 y 8, consistente en tratar de obtener por amenazas y dinero que Andino Peña le diera una declaración falsa.

La legitimidad y certeza de los hechos expuestos en la declaración que el querellado, en su función de abogado del demandante solicitó de Andino Peña, quedó establecida en las determinaciones del caso de *injunction* antes relacionado, y su adjudicación fue confirmada por el Comisionado Especial que oyó la prueba y llegó a igual conclusión. No encontrando falta alguna en la conducta del abogado querellado, no intervendremos con el arbitrio de dos juzgadores de hecho que coinciden en su apreciación de la prueba.

## II

En el segundo y tercer cargos (consolidados por contener alegaciones comunes) el Procurador General imputa al querellado "conducta altamente censurable, impropia e inmoral" porque ignoró una resolución del Tribunal Superior en la que se fijaban las condiciones en que podría disponerse la venta de un inmueble perteneciente a un incapacitado, y procedió a la venta contra el interés de éste.

Surge de autos que el 10 de abril de 1975 el Juez Sr. Abner Limardo, en la Sala de Bayamón del Tribunal Superior, dictó resolución en expediente de autorización judicial, autorizando a Luisa Robles a vender en pública subasta (y por precio mínimo de $24,000 del cual el comprador retendría $20,500 para asumir el pago de una hipoteca) una casa en Urb. Sierra Linda de Bayamón propiedad de su marido, de quien es tutora. En 14 de abril de 1975, citando la antes dicha

resolución de autorización judicial, el querellado en su condición de notario autorizó la escritura Núm. 27 mediante la cual la tutora Luisa Robles vendió la casa a Fernando González Cruz y esposa por precio de $23,500 del cual retuvieron $20,000 para pagar la hipoteca, recibiendo la vendedora la diferencia de $3,500 sin que ella consignara $1,300 de dicho balance, según ordenado por el Tribunal. Ella dispuso de todo el dinero, utilizando $3,000 en reparar una propiedad en Toa Alta perteneciente a su marido y a ella. Denegada la inscripción por el Registrador el querellado presentó una moción en el tribunal para que convalidara lo actuado mediante enmienda a su resolución de venta judicial, en el sentido de que de no haber en la subasta oferta mayor de $24,000 se le adjudicara la casa al comprador Fernando González Cruz por el precio ya pagado. El Juez Sr. Mangual denegó esta moción y ordenó que se cumpliera lo ordenado por el Tribunal. Así lo hizo el querellado. Se publicaron edictos, hubo subasta en la que el citado González Cruz fue el único licitador y obtuvo la buena pro por los mismos $3,500 que ya había pagado, procediéndose por el querellado al otorgamiento de escritura de venta judicial (Núm. 24 de 12 de mayo de 1976) en la que el Alguacil General de la Sala de Bayamón trasmitió el título que fue debidamente inscrito en el Registro.

Al referirse a este segundo cargo, en su informe, nos dice el Comisionado Especial:

"Es bueno anotar que el querellado no fue el representante legal de los peticionarios en la petición sobre Autorización Judicial.

El querellado en su contestación a la querella admite que incurrió en un error de derecho que considera excusable, acepta que debió ser más diligente y que debió investigar y corroborar los datos que se le suministraron para la preparación de la escritura de compra-venta.

No obstante, la labor realizada por él inmediatamente, a la vez que abrumadora, a nuestro juicio, subsanó el error y evitó que se perjudicaran los interesantes del incapaz.

A nuestro juicio la falta de diligencia por parte del querellado se debió principalmente a su falta de experiencia profesional entonces.

De haber tenido facultades adjudicativas hubiésemos declarado con lugar la moción para desestimar y hubiésemos exonerado al querellado, pero careciendo de dichas facultades dejamos el asunto para que lo resuelva esta Honorable Superioridad.

En Ex Parte Burr, el Juez Marshall, entonces Juez Presidente del Tribunal Supremo de Estados Unidos, dijo:

"The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him.' 9 Wheat 530."

■ Sin duda que pesa en la decisión de este cargo la realidad de que no hubo intención aviesa ni perjuicio alguno para el incapaz y que también es atenuante el considerable esfuerzo profesional del querellado para cumplimentar, aun cuando a posteriori, la orden del tribunal. El abogado, que es oficial del tribunal y parte inseparable de la dignidad intrínseca de los procedimientos judiciales, es el principalmente llamado a acatar sus órdenes y providencias, revisables sólo por los cauces de ley. La actuación del querellado subsanando el error no le libra de responsabilidad ética.

Es éste el segundo caso en que se cuestiona ante nos la conducta de este abogado de corta vida profesional. Ya antes fue amonestado por este Tribunal (Res. Mc-76-9 de 14 de mayo de 1976).[1] Aún aceptando que a la fecha en que cometió la falta imputada en este último cargo, no había recibido nuestra amonestación, queda sin contestar la interrogante de si tan temprana conjunción de malas prácticas es

---

[1] Dicha queja tuvo también su origen en la inobservancia del querellado de las disposiciones de ley respecto a la venta de bienes de menores. Al resolver concluimos "que la conducta del abogado Vargas Soto no acusa deshonestidad de su parte" y que "tampoco tenemos prueba de perjuicio causado a dichos menores ni a terceras personas." Al igual que ahora no encontramos torpeza moral en las irregularidades señaladas y sí deficiencia en el "saber y habilidad" que exige el Canon 18.

signo de inexperiencia y desconocimiento de las disciplinas jurídicas o de insuficiencia de los principios básicos que enaltecen la profesión de abogado. En uno u otro caso no podemos condonar el comportamiento del querellado, pero tampoco verlo en unas proporciones que le niega la prueba practicada ante el Comisionado Especial.

■ Censuramos la conducta profesional del querellado y le conminamos a medir sus futuros pasos, y a mejorarse con el estudio y la deliberación que le permitan ejercer la profesión con la responsabilidad ética y pública que nuestra sociedad exige de sus abogados en el texto del Canon 18: "[T]odo miembro del foro legal le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad, y la más completa honradez. El abogado debe poner todo su empeño en llevar a cabo en esa forma su gestión profesional . . . . Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable."

*Por segunda vez, censurado.*

El Juez Asociado Señor Negrón García disintió sin opinión.