ROCHE PRODUCTS, INC., demandante y recurrente, *v.* MUNICIPIO DE MANATÍ, demandado y recurrido.

*Números:* CE-93-436          *Resueltos:* 18 de noviembre de 1993
CE-93-473

*Ana Matilde Nin,* de *McConnell Valdés,* abogada del recurrente; *José E. Colón Santana, Peter Ortiz* y *Luis F. Colón Sánchez,* abogados de los recurridos.

## RESOLUCIÓN

Examinado cuidadosamente el *certiorari* presentado por la peticionaria Roche Products, Inc., se deniega. El Tribunal Superior, Sala de Arecibo, carecía de jurisdicción para dictar —el 17 de agosto de 1993— la segunda sentencia sumaria parcial, pues el Tribunal de Apelaciones, Sección Sur, el 9 de agosto de 1993, había expedido un *certiorari* para revisar la Resolución de 4 de mayo de 1993 que denegó la descalificación del licenciado Carazo del Bufete McConnell, Valdés Kelley, Sifre, Griggs y Ruiz-Suria como representante legal de Roche Products, Inc.

La Resolución de 4 de mayo de 1993 fue de naturaleza interlocutoria, pues sólo resolvió un incidente dentro del pleito general. Por tal razón se activó la Ley Núm. 21 de 13 de julio de 1992 (4 L.P.R.A. secs. 1, 35, 37–37–1, 61–61a, 121, 191, 231) la cual, en lo pertinente, dispone:

La radicación de un auto de *certiorari* ante el Tribunal de Ape-

laciones no paralizará los procedimientos ante el Tribunal Superior en cuanto a cuestiones no comprendidas en el recurso, *pero éste no podrá dictar sentencia.* (Énfasis suplido.) 4 L.P.R.A. ant. sec. 37.

De igual forma, el Reglamento del Tribunal de Apelaciones de 5 de noviembre de 1992 en su Regla 20(b) (4 L.P.R.A. Ap. XXII) dispone lo siguiente:

La presentación de un recurso de *certiorari* contra una resolución u orden interlocutoria no paralizará los procedimientos ante el Tribunal Superior en cuanto a los asuntos planteados en el recurso, *pero éste no podrá dictar sentencia.* (Énfasis suplido.)

Ambas disposiciones autorizaban al Tribunal Superior a continuar los procedimientos en el caso que tenía ante sí, pero *no podía dictar sentencia* como lo hizo el 17 de agosto de 1993 adjudicando, para todos los efectos, todas las controversias que habían pendientes en el caso.

En virtud de las disposiciones señaladas, no era necesario que el Tribunal de Apelaciones, en auxilio de su jurisdicción, expresamente paralizara los procedimientos en el Tribunal de Instancia.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente. La Juez Asociada Señora Naveira de Rodón se inhibió.

> (*Fdo.*) Francisco R. Agrait Lladó
> *Secretario General*

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Los tribunales, *instituciones integradas y dirigidas por seres humanos,* cometen errores. Ello es inevitable. Ahora bien, hay errores que *pueden y deben* ser evitados por los

tribunales y sus jueces. Uno de los más graves y lamentables lo es el de "medir con varas distintas" a las partes, personas, o abogados que comparecen ante el foro judicial. Precisamente debido a ello es que cuando se caracteriza a la "dama de la justicia" se le fija *una venda* sobre sus ojos. *El mensaje que se pretende transmitir es que la justicia se imparte, o se dispensa, independientemente de quienes son las personas, o las partes, que comparecen ante el tribunal.*

Ello, *naturalmente*, no constituye una regla inflexible o absoluta. *Hay situaciones, o circunstancias, que ameritan trato diferente.* No se puede, a manera de ejemplo, tratar igual a un niño que a un adulto; a una persona incapacitada que a una normal; la ley provee para atenuantes y agravantes, etc. Esas situaciones, sin embargo, han sido previstas por el legislador y, en consecuencia, el juez cuenta con guías o criterios que le ayudan a ejercer su discreción.

Lo que *no* se puede tolerar, sin embargo, es que el magistrado, o tribunal, actúe caprichosamente; esto es, que efectivamente trate en forma diferente a unos y otros según le parezca. *Dicha actuación caprichosa tiene nombre y apellido: abuso de discreción.* En fin, un tribunal de justicia no cualifica como tal si, al decidir los asuntos que llegan ante su consideración, no ejercita el inmenso poder que tiene en forma juiciosa y prudente y, por el contrario, "abusa" del mismo.

En relación con lo anteriormente expresado, y en lo pertinente al asunto ante nuestra consideración, *no* debe haber la menor duda sobre el hecho de que tenemos el *poder inherente* de sancionar a cualquier litigante, o abogado, que *abuse* del proceso litigioso radicando recursos frívolos o carentes de méritos. Es más, no sólo tenemos el poder, *tenemos la obligación de así hacerlo.*

La *radicación* de recursos frívolos, entre otros: retrasa innecesariamente la pronta solución de los litigios; le hace perder valioso tiempo al foro judicial, tiempo que éste

puede dedicar a asuntos verdaderamente meritorios; resulta en honorarios y costos adicionales innecesarios para todas las partes envueltas en el litigio, y causa que los integrantes de nuestra profesión adquieran la triste reputación de "mercenarios" del Derecho.

En el pasado hemos sido firmes al confrontarnos con recursos frívolos, imponiéndole sanciones económicas al *representante legal* de la parte que así ha actuado. No puede perderse de vista que, en esta clase de situaciones, el *principal responsable* lo es precisamente el abogado. Éste es el que se supone que sepa si el caso tiene o carece de méritos.

En ocasiones, no hay duda, nos hemos hecho de "la vista larga"; esto es, nos hemos confrontado con recursos frívolos y, aparte de hacer constar en la resolución denegatoria de los mismos que éstos se deniegan por razón de frivolidad, no hemos impuesto sanción alguna. En los mismos, *sin embargo*, y por lo menos en cuanto al Juez suscribiente respecta, así hemos actuado por entender que se ha tratado de compañeros abogados jóvenes y un tanto inexpertos; lo cual hemos considerado como un "atenuante".

¿Existen "atenuantes" en el caso ante nuestra consideración que ameriten que no impongamos una sanción económica a la representación legal de la demandada peticionaria Roche Products, Inc.? Creemos que no. Es más, en nuestro criterio lo que existen son "agravantes" que hacen, en nuestra opinión, mandatorio que le impongamos *severas* sanciones a la firma legal —McConnell Valdés— que representa a la peticionaria Roche Products, Inc. y/o a los dos (2) miembros de dicha firma de abogados que suscriben el recurso radicado.[1]

*Realmente resulta difícil imaginarse un recurso más frí-*

---

[1] Aún cuando en la "carátula" del recurso radicado se identifica a los abogados que suscriben el recurso como los Lcdos. Samuel T. Céspedes y Ana Matilde Nín, la única que firma el mismo es la licenciada Nín; abogados que, ciertamente, no caen dentro de la categoría a los cuales en el pasado hemos excusado debido a su juventud y poca experiencia en la profesión.

*volo y carente de méritos que el que estos abogados han radicado en el presente caso.* La posición que sostiene la representación legal de la peticionaria Roche Products, Inc. en el mismo *resulta ser insostenible e improcedente "por imperativo, o mandato, de ley".* Examinemos, *brevemente,* los hechos pertinentes.

## I

En relación con un pleito que la peticionaria Roche Products, Inc. radicara contra el Municipio de Manatí ante la Sala de Arecibo del Tribunal Superior de Puerto Rico —en el cual Roche había impugnado unas notificaciones de deficiencias que el Municipio le había hecho respecto al pago de patentes municipales, y estando, todavía, pendiente de resolución por dicho foro la procedencia de unas alegadas deficiencias relacionadas con "negocios financieros" llevados a cabo por Roche— el Municipio de Manatí solicitó la descalificación de un abogado de McConnell Valdés y de ese bufete, por alegada violación a la Ley de Ética Gubernamental.

El tribunal de instancia, luego de la celebración de vista, emitió Resolución de 4 de mayo de 1993, denegando la descalificación solicitada. Inconforme, el Municipio de Manatí recurrió el 24 de mayo de 1993, *vía certiorari*, ante el extinto Tribunal de Apelaciones en revisión de la mencionada resolución interlocutoria. Con fecha de 9 de agosto de 1993, una Sala de la Sección Sur del Tribunal de Apelaciones *expidió* el recurso de *certiorari* solicitado, archivándose copia de dicha notificación en autos el 13 de agosto de 1993.

Ello, no obstante, el 17 de agosto de 1993 el Tribunal Superior, Sala de Arecibo, declaró con lugar una solicitud de sentencia sumaria que Roche Products, Inc. había radicado con anterioridad a plantearse el asunto de la descalificación de la representación legal de ésta *mediante la cual*

*dicho foro judicial resolvió, en su totalidad, el pleito ante su consideración.*([2])

Inconforme, el Municipio acudió ante el Tribunal de Apelaciones —mediante "moción urgente en auxilio de jurisdicción"— solicitando la anulación de la referida sentencia sumaria. Mediante Orden de 25 de agosto de 1993 el Tribunal de Apelaciones *anuló* la actuación del Tribunal Superior. Sostuvo dicho tribunal que el foro de instancia había actuado "sin jurisdicción ni autoridad legal para ello". El referido foro apelativo basó dicha conclusión en que "la expedición de un auto de certiorari, una vez notificado, priva de jurisdicción al tribunal recurrido para seguir actuando en el caso respecto a cualquier asunto razonablemente relacionado con la controversia objeto del recurso". Orden de 25 de agosto de 1993, pág. 2.

Roche Products, Inc. acudió —vía *certiorari*— ante este Tribunal en revisión de la referida orden. En el recurso que a esos efectos radicara su representación legal —el cual es bastante voluminoso— sostuvo que:

> 1. El Tribunal Superior no carecía de jurisdicción para dictar la resolución y sentencia en cuestión porque el mandamiento que le notificaba de la expedición del auto de *certiorari* aún no había sido diligenciado y no había orden previa alguna de paralización de los procedimientos en instancia.
> 2. El Tribunal Superior no carecía de jurisdicción para dictar la resolución y sentencia en cuestión, aún de haberse expedido y notificado el auto porque no había orden previa de paralización de los procedimientos y la resolución y sentencia no versan sobre el asunto pendiente de revisión de certiorari. Petición de *certiorari*, pág. 8.

Como veremos, y por las razones y fundamentos que a

---

([2]) El referido foro judicial había dictado el 14 de febrero de 1992 una "primera" sentencia sumaria parcial mediante la cual resolvió que el Municipio de Manatí carecía de autoridad para imponerle patentes a Roche sobre los ingresos derivados por ésta *de sus operaciones manufactureras.*

La "segunda" sentencia sumaria que dictó el 17 de agosto de 1993 dispuso de las restantes controversias entre las partes, relativas las mismas a la procedencia jurídica de las notificaciones de deficiencias respecto a los alegados negocios financieros de Roche Products, Inc.

continuación sucintamente expondremos, *dichos señalamientos son totalmente irrelevantes a la correcta solución de la situación procesal ante nuestra consideración.* Realmente constituiría una pérdida de tiempo valioso discutir los mismos.

## II

Independientemente del hecho de que —como sostuvo el extinto Tribunal de Apelaciones— en el caso de autos sea aplicable, *por analogía,* la norma establecida hace casi treinta (30) años por este Tribunal en *Kane v. República de Cuba,* 90 D.P.R. 428 (1964) —a los efectos de que la *expedición* de un auto de *certiorari* por este Tribunal priva de jurisdicción al tribunal recurrido para seguir actuando en el caso respecto a cualquier asunto relacionado con la controversia planteada en el mismo— *lo cierto es que, a la luz del estado de derecho vigente en nuestra jurisdicción al momento de la ocurrencia de los procedimientos judiciales en controversia, el Tribunal Superior de Puerto Rico, Sala de Arecibo, estaba impedido, por mandato expreso de ley, de dictar sentencia en el caso una vez se radicó, por el Municipio de Manatí, el recurso de certiorari ante el Tribunal de Apelaciones en revisión de la resolución interlocutoria del tribunal recurrido.*

Así, *clara y específicamente,* lo establecía *tanto* la ley que estableció el Tribunal de Apelaciones, Ley Núm. 21 de 13 de julio de 1992 (4 L.P.R.A. secs. 1, 35, 37–37–1, 61–61a, 121, 191, 231), *como* el Reglamento del Tribunal de Apelaciones, promulgado el mismo mediante resolución de este Tribunal de 5 de noviembre de 1992. Veamos.

El Art. 6(h)· de la citada Ley Núm. 21 establecía, *en lo pertinente,* que la "*radicación* de un auto de certiorari ante el Tribunal de Apelaciones *no* paralizará los procedimientos ante el Tribunal Superior en cuanto a cuestiones no comprendidas en el recurso, *pero éste no podrá dictar*

*sentencia".* (Énfasis suplido.) 4 L.P.R.A. ant. sec. 37. *Por su parte*, la Regla 20(b) del antes mencionado Reglamento disponía que:

La presentación de un recurso de certiorari *contra una resolución u orden interlocutoria* no paralizará los procedimientos ante el Tribunal Superior en cuanto a los asuntos planteados en el recurso, *pero éste no podrá dictar sentencia.* (Énfasis suplido.) 4 L.P.R.A. Ap. XXII.

Resulta, en consecuencia, *patentemente claro* que, una vez el Municipio de Manatí *radicó* el recurso de *certiorari* ante el Tribunal de Apelaciones en revisión de la resolución interlocutoria denegatoria de descalificación emitida por la Sala de Arecibo del Tribunal Superior, *dicho foro judicial no podía dictar sentencia en el caso hasta tanto se resolviera el referido recurso.* Igualmente claro, por ende, resulta ser la conclusión de que la Orden de 25 de agosto de 1993, mediante la cual el Tribunal de Apelaciones anuló la referida sentencia, *es una correcta en derecho*; razón por la cual el recurso de *certiorari* que ante este Tribunal radicara la peticionaria Roche Products, Inc. en revisión de la actuación del Tribunal de Apelaciones *es patentemente frívolo.*

### III

A nuestra manera de ver las cosas, la radicación de recursos frívolos ante los tribunales de justicia se debe, *en términos generales*, a una (1) de tres (3) explicaciones, *a saber*: crasa incompetencia profesional y/o negligencia en el ejercicio de la profesión; la intención, o necesidad, de cobrarle honorarios innecesarios y excesivos a un cliente adinerado, o la creencia de que se puede engañar al foro

judicial.[3] Cualquiera que sea la explicación de lo aquí sucedido —la cual, necesariamente, no tiene que ser una de las tres (3) antes señaladas— somos del criterio que resulta procedente en el presente caso, dados los hechos particulares del mismo, la imposición de una *severa* sanción económica a la firma McConnell Valdés y/o a los abogados que suscribieron el recurso en representación de la misma.

Por las razones antes expresadas, y aun cuando concurrimos con la decisión mayoritaria denegatoria del recurso radicado, *disentimos* de la omisión inexplicada en que incurre el Tribunal al no imponerle sanciones a la representación legal de la peticionaria Roche Products, Inc.

---

[3] Actuación o conducta que, inclusive, puede constituir o desembocar en una violación a los cánones de ética profesional.