*In re* LUIS ENRIQUE VARGAS SOTO, querellado.

*Número:* CP-96-11          *Resuelto:* 30 de junio de 1998

*Carlos Lugo Fiol, Procurador General Auxiliar, Edda Serrano Blasini, Subprocuradora General, y Cynthia Iglesias Quiñones, Procuradora General Auxiliar,* querellantes; *Orlando Martínez Sotomayor,* abogado del querellado; *Luis Enrique Vargas Soto, pro se; Enrique Rivera Santana,* Comisionado Especial.

PER CURIAM: El 19 de septiembre de 1996 el Procurador General de Puerto Rico presentó una querella ante nos contra el Lcdo. Luis Enrique Vargas Soto. Le imputó los cargos siguientes:

### CARGO I

El Lcdo. Luis Enrique Vargas Soto incurrió ... en violación al canon 5 de los Cánones de Etica Profesional, 4 L.P.R.A. Ap. IX, C.5 al intervenir de forma indebida con la testigo del ministerio fiscal, María López Ortiz en el caso 92-4520 y 92-4523.

. . . . . . . .

### CARGO II

El Lcdo. Luis Enrique Vargas Soto incurrió ... en violación al canon 18 de Etica Profesional, 4 L.P.R.A. Ap. IX, C.18 cuando al pretender salir triunfante en la causa de su cliente, realizó actos indebidos e ilegales pero convenientes a la consecución de ese propósito.

. . . . . . . .

## CARGO III

El Lcdo. Luis Enrique Vargas Soto violó el canon 35, 4 L.P.R.A. Ap. IX C.35 cuando facilitó o propició la desaparición de prueba testifical del Ministerio Público en el caso 92-4520 y 92-4523.

Es menester señalar que, como bien nos ha indicado el Procurador General, no es ésta la primera vez que la conducta profesional del querellado licenciado Vargas Soto ha ocupado nuestra atención dentro de un procedimiento disciplinario. Mediante Resolución de 14 de mayo de 1976, el querellado de epígrafe fue *amonestado* y apercibido por no seguir fielmente el trámite requerido por ley para la venta de unos bienes pertenecientes a unos menores. Tres años más tarde, mediante *per curiam* de 27 de febrero de 1979, *censuramos* la actuación del abogado de epígrafe porque, además de haber ignorado una resolución nuestra, había violado el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dentro del trámite judicial de una transacción de compraventa de un inmueble perteneciente a un incapacitado. "[L]e conminamos a medir sus futuros pasos, y a mejorarse con el estudio y la deliberación que le permitan ejercer la profesión con la responsabilidad ética y pública que nuestra sociedad exige de sus abogados ...". *In re Vargas Soto*, 108 D.P.R. 490, 495 (1979). Más recientemente, mediante *per curiam* de 6 de diciembre de 1990, *suspendimos* al abogado querellado del ejercicio de la profesión por el término de tres (3) meses por violar, una vez más, el mandato del Canon 18 del Código de Ética Profesional, *supra*, y por violar el Canon 9 (4 L.P.R.A. Ap. IX) tras faltarle el respeto al Tribunal de Primera Instancia. *In re Vargas Soto*, supra. Con este historial en mente, pasemos a examinar lo relativo a la querella que está ante nos ahora.

El 26 de septiembre de 1996 le ordenamos al querellado contestar la querella aludida dentro de un término de quince (15) días a partir de la notificación de nuestra orden, que se hizo personalmente el 27 de septiembre de

1996. El 11 de octubre de 1996, dos semanas después, el querellado nos solicitó una prórroga para contestar la querella referida. El 24 de octubre le concedimos una prórroga de cuarenta y cinco (45) días, según fuera solicitada. Transcurrido ese período, el querellado no compareció. Por ello, el 24 de febrero de 1997, 77 días después del vencimiento de la prórroga, tuvimos por negadas las alegaciones de la querella y nombramos un Comisionado Especial con instrucciones de que recibiera la prueba correspondiente y nos rindiera un informe con sus conclusiones de hecho respecto a la querella. El 26 de febrero el querellado compareció ante nos solicitando que se dejara sin efecto lo actuado y se le concediera una prórroga de quince (15) días adicionales. El 6 de marzo denegamos la moción de prórroga adicional antes referida.

El 10 de marzo de 1997 el querellado compareció solicitando la desestimación de la querella y, finalmente, nos sometió su contestación, ignorando nuestras resoluciones de 24 de febrero y de 6 de marzo de 1997 antes referidas. El 19 de marzo el Comisionado Especial se reunió con las partes y se señaló una vista para el 7 de mayo. Mediante Resolución de 2 de mayo de 1997, dispusimos que los escritos presentados por el querellado fueran referidos a la atención del Comisionado. Celebrada la vista el 7 de mayo, el Comisionado Especial denegó la moción de desestimación presentada por el querellado. La vista evidenciaria señalada sobre los hechos, suspendida en varias ocasiones a solicitud del Procurador General, fue celebrada los días 4 y 5 de noviembre de 1997.

Luego de celebrados los procedimientos de rigor, el 24 de noviembre de 1997 el Comisionado rindió su informe respecto a la querella de autos. En lo pertinente, el Comisionado Especial formuló las siguientes determinaciones de hecho:

1. En 1992 se perpetró un escalamiento en una residencia ubicada en Cataño, Puerto Rico. Dos personas pe-

netraron a la residencia en cuestión y se llevaron objetos de ésta. La Sra. María López Ortiz, vecina del lugar y madre de uno de los escaladores, observó cuando se efectuó el escalamiento.

2.  La señora López Ortiz le indicó al dueño de la propiedad escalada, el señor Puig de Jesús, el lugar a donde se dirigieron las personas con los objetos hurtados. Parte de la propiedad hurtada fue recuperada.

3.  El señor Puig de Jesús presentó la correspondiente querella. A la luz de los hechos relatados, se presentaron denuncias contra cuatro personas. Se determinó causa probable para arresto en contra de los cuatro. El nombre de la señora López Ortiz se incluyó en las denuncias como testigo en todos los casos.

4.  En la fecha pautada para la vista preliminar de los cuatro imputados, mientras la testigo López Ortiz esperaba ser llamada a declarar en el pasillo del Centro Judicial de Bayamón, el licenciado Vargas Soto, representante legal de uno de los imputados, se le acercó y le indicó a la testigo que ya todo se había arreglado, que podía marcharse del Tribunal y la acompañó hasta las escaleras.

5.  Llamado el caso para la vista preliminar, ya la testigo López Ortiz se había marchado. Así las cosas, el juez que presidía la vista, Hon. Osvaldo Rivera Cianchini, Juez, ordenó el arresto de la testigo y le fijó una fianza de $100.

6.  Ante esa circunstancia, la señora López Ortiz compareció al tribunal y explicó bajo juramento que el día de la vista preliminar abandonó el tribunal porque el licenciado Vargas Soto le había dicho que todo se había arreglado y que podía marcharse. Como la señora López Ortiz conocía previamente al licenciado Vargas Soto, por ser de Cataño, donde residía ella, lo describió específicamente ante el Juez como "trigueño, bajito, con lasito rojo y chaquetón oscuro". Luego de esas expresiones, el Hon. Rivera Cianchini dejó sin efecto el arresto que había ordenado en contra de la señora López Ortiz y señaló una vista para que el licen-

ciado Vargas Soto tuviera la oportunidad de reaccionar a lo manifestado por la testigo.

7. Durante la celebración de la vista, el licenciado Vargas Soto tuvo la oportunidad de contrainterrogar a la testigo López Ortiz y de negar su testimonio. Ese mismo día, luego de la vista, el Hon. Rivera Cianchini preparó y suscribió una resolución informativa dirigida al Tribunal Supremo, dando constancia de lo ocurrido y señalando posibles violaciones a los cánones del Código de Ética Profesional.

8. Alrededor de cuatro o seis meses antes de la vista evidenciaria ante el Comisionado Especial, el licenciado Vargas Soto visitó en tres ocasiones la residencia de la testigo López Ortiz. En esas visitas, le pidió a la testigo que cuando fuera a declarar (ante el Comisionado Especial) dijera que se "olvidó", "que ya no recuerda nada", que no se "acordaba" de cómo estaba vestido; que dijera que ella estaba enferma de los nervios por razón de que le habían matado a un hijo. Aunque fue cierto que la testigo perdió a un hijo, ella no ha estado enferma de los nervios.

9. Pocos días antes de la vista evidenciaria de este caso ante el Comisionado Especial y previo al comienzo de la época navideña, el licenciado Vargas Soto envió a la dirección residencial de la Lcda. Cynthia Iglesias, quien comparece en este caso a nombre del Procurador General, una tarjeta navideña en cuya portada aparece una pintura de la persona del licenciado Vargas Soto. En el interior de la tarjeta aparecía un mensaje de año nuevo, su firma y la poesía de Gabriela Mistral titulada "El Placer de Servir". En la contraportada aparecía una fotografía y un anuncio del licenciado Vargas Soto que leía: "Especialista en: Casos Criminales, Civiles y Herencia".[1]

---

[1] El Comisionado Especial hizo constar que esa posible violación al Canon 36 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, no era un asunto contenido en la querella de epígrafe. No obstante, el Comisionado incluyó la determinación de hecho antes relacionada porque entendió que la tarjeta podía dar lugar a alguna inferencia aplicable al caso.

El querellado le solicitó al Comisionado Especial que modificara su informe y que formulara determinaciones de hecho adicionales. Mediante Resolución de 15 de enero de 1998, el Comisionado sostuvo esencialmente lo mismo que había dispuesto en su informe de 24 de noviembre de 1997.

I

Antes de adjudicar la querella del Procurador General objeto del informe referido del Comisionado Especial, es menester atender otra cuestión que también forma parte de este caso. Reiteradamente hemos resuelto que la conducta de un abogado de ignorar los requerimientos de este Tribunal en el trámite de una queja disciplinaria en su contra, acarrea la imposición de severas sanciones disciplinarias, pues se trata de conducta en contravención a las normas éticas que rigen el ejercicio de la abogacía. *In re Laborde Freyre*, 144 D.P.R. 827 (1998); *In re Melecio Morales*, 144 D.P.R. 824 (1998); *In re Escalona Vicenty*, 143 D.P.R. Ap. (1997); *In re Claudio Ortiz*, 141 D.P.R. 937 (1996); *In re Rivera Rivera*, 141 D.P.R. Ap. (1996); *In re Pérez Santiago*, 141 D.P.R. 112 (1996); *In re Ríos Acosta I*, 139 D.P.R. 117 (1995)

Todos los abogados tienen el deber ineludible de responder diligentemente a nuestros requerimientos. *In re Melecio Morales*, supra, pág. 826; *In re Ríos Acosta I*, supra; *In re Bonaparte Rosaly*, 130 D.P.R. 199, 201 (1992). Igualmente, tienen la obligación de prestar escrupulosa atención y obediencia a nuestras órdenes, particularmente cuando se trata de su conducta profesional. *In re Manzano Velázquez*, 144 D.P.R. 84 (1997).

El incumplimiento por parte de un abogado con nuestras órdenes en relación con el trámite de una queja, constituye una falta ética separada e independiente de los méritos de la queja. *In re Ríos Acosta II*, 139 D.P.R. 359 (1995). Véase, además, *In re Yumet Breidenbach*, 143

D.P.R. 372 (1997). Ésta puede ser inmeritoria y el abogado quedar sujeto a una sanción disciplinaria por su dejadez e inacción en el trámite de la queja. *In re Melecio Morales*, supra; *In re Ríos Acosta I*, 143 D.P.R. 128 (1997). Véase, además, *In re Rivera Maldonado*, 143 D.P.R. 877 (1997). El patrón de dejadez e incumplimiento con nuestras órdenes en la esfera disciplinaria es incompatible con el ejercicio de la abogacía. *In re Castrillón Ramírez*, 143 D.P.R. 74 (1997). Reafirmamos aquí que " '[l]a indebida, irrazonable e inexcusable tardanza del querellado en formular su contestación a la querella es indicativa de una falta de respeto hacia los procedimientos del Tribunal' ". (Corchetes en el original.) *In re Álvarez Meléndez*, 129 D.P.R. 495, 498 (1991). Desatender reiteradamente las órdenes de este Tribunal constituye, además, una violación al Canon 9 del Código de Ética Profesional, *supra*, en cuanto a la exigencia de respeto hacia los tribunales. *In re Salichs Martínez*, 131 D.P.R. 481, 490 (1992).

El compromiso del abogado de mantener y contribuir a un orden jurídico íntegro y eficaz, para lograr la más completa confianza y apoyo de la ciudadanía y desalentar actitudes dilatorias, se extiende no sólo a la esfera de la litigación de causas, sino a la jurisdicción disciplinaria del Tribunal Supremo. *In re Ríos Acosta I*, 143 D.P.R. 128 (1997).

En el caso de epígrafe, el querellado, licenciado Vargas Soto, desatendió los términos que se le concedieron para contestar la querella presentada en su contra. Surge de los hechos que el abogado querellado presentó su contestación a la querella cinco meses y medio después de iniciado el trámite disciplinario en su contra, dilatando y desacatando nuestras resoluciones fechadas el 24 de febrero y el 6 de marzo de 1997. La conducta manifestada por el licenciado Vargas Soto en cuanto a los requerimientos que le hemos hecho es, por sí, razón independiente para imponerle sanciones disciplinarias al abogado de epígrafe.

## II

Ahora pasamos a resolver la querella del Procurador General a la luz del informe y las conclusiones de hechos formuladas por el Comisionado Especial en este caso. Los Cánones 5 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y el Canon 18, *supra*, prescriben y enfatizan la necesidad de que las aportaciones de los abogados al quehacer jurídico estén enmarcadas dentro de lo que se espera de esta insigne profesión. *In re Filardi Guzmán*, 144 D.P.R. 710 (1998). Estos cánones prohíben el engaño y prescriben ajustarse a la verdad y sinceridad al examinar testigos, al redactar documentos y al presentar sus causas ante los tribunales. *In re Filardi Guzmán*, supra; *In re Soto*, 134 D.P.R. 772, 781 (1993); *In re García Ortiz*, 134 D.P.R. 666 (1993). Incurre en grave falta ética el abogado que al ejercer su profesión falta a la verdad para su propio beneficio, haciendo constar un hecho cuya falsedad conocía. *In re Filardi Guzmán*, supra, pág. 717; *In re Maduro Classen*, 142 D.P.R. 611, *In re Vergne Torres y Álvarez Meléndez*, 137 D.P.R. 777 (1995). De igual forma, es reprochable la intervención indebida de un abogado con sus testigos, o los de la parte contraria, con el propósito de salir triunfante en las causas de un cliente. *In re Clavell Ruiz*, 131 D.P.R. 500, 508 (1992). Eso constituye conducta profesional irresponsable. Véase *In re Peña Clós*, 135 D.P.R. 590 (1994). En todos esos casos hemos ordenado la separación del ejercicio de la profesión al abogado querellado por tratarse de faltas graves.

Todos los cargos formulados por el Procurador General contra el abogado querellado fueron debidamente probados. En efecto, el licenciado Vargas Soto violó los Cánones 5, 18 y 35 del Código de Ética Profesional, *supra*, según imputados en la querella de epígrafe. Intervino impropiamente con la testigo de la parte contraria y procuró que éste alterase su testimonio engañosamente. Pretendió

salir triunfante en la causa de su cliente mediante actos indebidos. No desplegó una conducta de sinceridad y honradez ante el foro judicial.

### III

Las varias actuaciones impropias del licenciado Vargas Soto, que hemos examinado en los acápites II y III de esta opinión, son muy graves, según hemos destacado ya. Tomadas en conjunto, y vistas también a la luz del historial de comportamiento poco profesional de Vargas Soto relatado antes, conducen inexorablemente a la conclusión de que el querellado no tiene un compromiso real de observar las normas que rigen el desempeño profesional. Sus reiterados actos en violación de los cánones del Código de Ética Profesional de la abogacía, cada vez más graves, delatan una conducta contumaz sobre el particular, que lo incapacita para continuar ejerciendo la profesión.

Por los fundamentos expuestos, *se dictará sentencia para separar indefinidamente al Lcdo. Luis Enrique Vargas Soto del ejercicio de la profesión de abogado en Puerto Rico.*