*In re* José Antonio García Ortiz, querellado.

*Números:* CP-89-848
MC-88-61

*Resueltos:* 22 de junio de 1993

*Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz* y *Reina Colón de Rodríguez, Subprocuradoras Generales*, e *Yvonne Casanova Pelosi, Procuradora General Auxiliar*, abogados de El Pueblo; *Harry Padilla Martínez*, abogado del querellado; *Edwin R. Bonilla Vélez*, Comisionado Especial.

PER CURIAM: Nos corresponde deteminar si el Lcdo. José Antonio García Ortiz —en su gestión como abogado y más tarde como apoderado de la Sra. Noemí Nazario Pacheco— incurrió en violaciones a los Cánones 18, 19, 20 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y está, por lo tanto, sujeto a una sanción disciplinaria. Los hechos que dieron paso a la querella de marras sucedieron del modo siguiente.

I

Hacia el año 1977, la Sra. Noemí Nazario Pacheco era dueña de un inmueble sobre el cual pesaba un gravamen

hipotecario a favor de la Administración de Hogares de Agricultores, una agencia federal (en adelante "FHA", por sus siglas en inglés). Como la señora Nazario había incumplido sus obligaciones bajo el contrato de hipoteca, la FHA asumió la administración de la propiedad. Mediante Escritura otorgada el 21 de febrero de 1985, y con la autorización de la señora Nazario, la agencia arrendó la propiedad a los esposos Rafael A. Carrera Pagán y Wanda S. Lugo Santiago. Hacia esa fecha, la señora Nazario Pacheco se había trasladado a vivir a Estados Unidos. Finalmente, y como última medida para proteger su acreencia sin tener que recurrir al procedimiento de ejecución de hipoteca, la FHA gestionó la compraventa de la propiedad.

El 27 de abril de 1985, la señora Nazario otorgó en la ciudad de Paterson, Nueva Jersey, un poder especial para autorizar al aquí querellado, Lcdo. José Antonio García Ortiz, a comparecer en la escritura de compraventa en representación suya. El 19 de agosto de 1985 se otorgaron ante el notario Xavier R. Torres Villa, las Escrituras Núm. 69 de Protocolización de Poder Especial y Núm. 70 de Liquidación de Préstamo Hipotecario, Compraventa, Reconocimiento de Obligación, Modificación y Ampliación de Hipoteca para el Rescate del Subsidio de Intereses. Mediante esta última, la señora Nazario Pacheco vendió a los esposos Carrera-Santiago el inmueble referido.

En esa misma fecha, el antedicho notario Torres Villa también autorizó un documento titulado "Declaración de Vendedores". En éste el querellado compareció como apoderado y bajo juramento, y "según información recibida y su mejor creencia" (Apéndice II, pág. 1), hizo varias representaciones en torno a la propiedad objeto de la compraventa. En la última cláusula aseveró lo siguiente:

> No hay sentencia, órdenes, decretos o acciones judiciales pendientes en cortes Estatales o Federales contra los vendedores, ni existe gravamen contributivo Estatal o Federal o reclamación contra ellos, que sea o pudiera ser gravamen contra la finca. No hay pendiente procedimiento de quiebra, insolvencia, adminis-

tración, o procedimientos similares contra ellos en cortes Estatales o Federales; *y el traspaso propuesto no se hace para entorpecer, dilatar o defraudar a sus acreedores. Esta declaración se otorga. para inducir a Estados Unidos a hacer o asegurar un préstamo o consentir en el traspaso respecto al terreno mencionado.* (Énfasis suplido.)[1] Apéndice II, pág. 2.

Dos (2) años más tarde, la Cooperativa de Seguros Múltiples (en adelante Cooperativa) presentó ante el Tribunal Superior de Mayagüez una moción para ejecutar una sentencia en cobro de dinero a su favor, dictada contra la señora Nazario el 2 de abril de 1984.[2] El 10 de agosto de 1987, el tribunal ordenó que se ejecutara la sentencia sobre el inmueble objeto de la compraventa descrita. Hacia esa fecha, las escrituras a través de las cuales los esposos Carrera-Santiago adquirieron el inmueble, aún no habían sido inscritas. Por lo cual, la señora Nazario todavía aparecía como dueña en el Registro de la Propiedad.[3]

Para defender su interés sobre la propiedad en cuestión, los esposos Carrera-Santiago solicitaron permiso al tribunal para intervenir en el procedimiento de ejecución, conforme a la Regla 21.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El tribunal acogió su solicitud y señaló vista para el 21 de abril de 1988. Surgió entonces una controversia en cuanto a si la venta a los interventores se hizo con el propósito de defraudar a la Cooperativa, acreedora de la vendedora.

---

[1] La referida declaración era requerida por la FHA, y constaba en un formulario preimpreso.

[2] El Tribunal Superior, Sala de Mayagüez, dictó la referida sentencia en el caso *Cooperativa de Seguros Múltiples de Puerto Rico v. Noemí Nazario Pacheco et als.,* Caso Civil Núm. CS-82-761. Impuso a la señora Nazario el pago de ochenta mil dólares ($80,000), más costas e intereses, y tres mil dólares ($3,000) en honorarios de abogado. La notificación de la sentencia se envió al querellado al Apartado 607, Ponce, Puerto Rico, 00733. Copia de ésta fue archivada en autos el 5 de abril de 1984.

[3] Debido a su negligencia al no presentar las escrituras a tiempo, la Oficina del Procurador General presentó un informe sobre la actuación del notario Torres Villa. En vista de que el letrado no incurrió en la conducta aludida de manera intencional, sino por inadvertencia y falta de diligencia, y en vista de que el letrado voluntariamente *reconoció su falta y cumplió cabalmente y a iniciativa propia con la obligación de reponer el daño causado,* ordenamos el archivo del asunto mediante Resolución de 23 de octubre de 1989.

La prueba desfilada durante la vista reveló que el querellado representó a la señora Nazario en el pleito que había dado paso a la sentencia que se intentaba ejecutar. Su única gestión en el caso fue presentar la contestación a la demanda. El tribunal dictó una sentencia sumaria a favor de la Cooperativa, sin que el querellado presentara ninguna oposición. La prueba indicó, además, que posiblemente el querellado ni siquiera había recibido la notificación de la sentencia dictada en contra de su cliente, debido a que cambió su dirección en repetidas ocasiones sin informárselo al tribunal. Tampoco renunció formalmente a la representación legal de la señora Nazario.

Desfilada la prueba, el foro de instancia dictó una sentencia el 13 de septiembre de 1988. Determinó que la transacción mediante la cual la señora Nazario vendió a los interventores, los esposos Carrera-Santiago, la propiedad que se intentaba ejecutar, no fue en fraude de los acreedores. Concluyó, sin embargo, que el querellado actuó negligentemente al firmar la Declaración de Vendedores, en la que aseveraba que no existía sentencia o pleito pendiente contra los vendedores que fuera o pudiera ser un gravamen contra la finca. La Hon. Juez Carmen J. Ortiz Ramos nos refirió el asunto para que investigáramos si la gestión del Lcdo. José Antonio García Ortiz como abogado de la señora Nazario y, más tarde, como su apoderado, requiere el ejercicio de nuestra jurisdicción disciplinaria.

El 14 de octubre de 1988 ordenamos a la Oficina del Procurador General investigar la conducta del querellado. El 11 de abril de 1989 el Procurador General presentó su informe. Visto ese informe, el 23 de octubre siguiente ordenamos a dicha Oficina presentar una querella contra el Lcdo. José Antonio García Ortiz. En cumplimiento de nuestra orden, el 18 de diciembre de 1989 el Procurador General presentó ante este Foro una querella en la cual imputó

al licenciado García Ortiz haber violado los Cánones 18, 19, 20 y 38 del Código de Ética Profesional, *supra*.[4]

Los cargos por violación a los Cánones 18, 19 y 20 del Código de Ética Profesional, *supra*, se relacionan principalmente con la gestión del querellado como abogado de la señora Nazario en el pleito por el cobro de dinero que contra ésta llevara la Cooperativa. Específicamente, se le imputa que no representó a su cliente con la debida competencia y diligencia, en violación al Canon 18 del Código de Ética Profesional, *supra*; que no solicitó permiso para renunciar a su representación, en violación al Canon 20 del Código de Ética Profesional, *supra*; y que no le informó de la sentencia que recayera en su contra, en violación al Canon 19 del Código de Ética Profesional, *supra*.

Los cargos por violación al Canon 38 del Código de Ética Profesional, *supra*, se basan primordialmente en su gestión como apoderado de la señora Nazario en la compraventa. Específicamente, se alega que falló en su deber de exaltar la dignidad de la profesión legal al suscribir una declaración jurada en la cual hacía constar que desconocía el decreto judicial o reclamación alguna que fuera o pudiera ser un gravamen contra el inmueble que la señora Nazario vendió a los esposos Carrera-Santiago, aun cuando conocía o debió conocer acerca de la sentencia para el cobro de dinero que se había dictado contra ella en el pleito en el cual él mismo la representó.

El 8 de junio de 1990 nombramos Comisionado Especial al Lcdo. Edwin Bonilla Vélez, quien recibió la prueba sobre las imputaciones. El 9 de diciembre de 1992 el Comisionado rindió su informe, del cual se desprenden los hechos hasta aquí reseñados. Visto dicho informe, procedemos a pronunciarnos sobre la gestión del querellado.

---

[4] La violación al Canon 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, se incluyó mediante enmienda el 20 de noviembre de 1990.

## II

Atendemos, primero, el cargo por violación al Canon 38 del Código de Ética Profesional, *supra*. El Procurador General aduce que el querellado faltó a la verdad cuando refrendó la última cláusula de la Declaración de Vendedores, puesto que le constaba o debió constarle que existía una sentencia contra la vendedora.

Por su parte, el querellado argumenta que la sentencia aludida no era una de las comprendidas dentro del alcance de la última cláusula de la Declaración de Vendedores, por lo que no faltó a la verdad al refrendarla. El querellado explica que de dicha cláusula surge que la firma de la Declaración tiene como propósito inducir a la agencia a asegurar un préstamo o consentir a un traspaso. Aduce que la sentencia recaída en contra de su cliente no era una sentencia que pudiera afectar esa decisión de la agencia y que era meramente una obligación para el cobro de dinero, y no un gravamen contra la finca. Argumenta además que, una vez inscrita la compraventa, la sentencia nunca podría afectar el título de los compradores. Tampoco podría afectar la acreencia hipotecaria de la FHA, ya que su derecho constaba inscrito en el Registro de la Propiedad con rango preferente.

No tiene razón el querellado. La última cláusula de la Declaración de Vendedores afirma que "[n]o hay sentencia ... contra los vendedores ... que sea o pudiera ser un gravamen contra la finca". Apéndice II, pág. 2. La sentencia en cobro de dinero que recayó contra la señora Nazario, la vendedora, es una de las tomadas en cuenta en dicha cláusula. Como sentencia final y firme, podía ejecutarse sobre cualquier bien de la demandada, inclusive la finca en cuestión. Era, por lo tanto, una sentencia que, mediante el procedimiento de embargo, podía convertirse en un gravamen sobre la finca. El hecho de que ese tipo de gravamen potencial pudiera o no afectar la decisión de la agencia

federal de consentir al traspaso o asegurar el crédito, no implica que estuviese fuera del alcance de la cláusula. Ésta también tiene el objetivo de certificar que el traspaso no se hace para "entorpecer, dilatar o defraudar" a los acreedores de la vendedora.

Por lo tanto, al refrendar la última cláusula de la Declaración de Vendedores, el querellado aseveró como cierto un hecho que era falso. Existía una sentencia en contra de la vendedora que podía ser un gravamen contra la finca. En vista de que fue el propio querellado quien representó a la vendedora en el pleito que originó la sentencia aludida, no puede interponer como defensa su desconocimiento de la sentencia dictada. Ver, *e.g.*, *Colón Prieto v. Géigel*, 115 D.P.R. 232, 240 (1984).(5) Como abogado de la vendedora en el pleito, el querellado debió estar al tanto de un desarrollo tan importante en el caso como es la sentencia. No estarlo impide que cumpla cabalmente con su deber de mantener informado a su cliente de todo desarrollo importante en el caso, en contravención al Canon 19 del Código de Ética Profesional, *supra*.

El querellado parece entender que su deber como representante de la señora Nazario terminó cuando presentó la contestación a la demanda, por lo que no tenía el deber de conocer de la sentencia dictada. Alega que cuando la se-

---

(5) Surge de la declaración jurada que el querellado prestó ante la Hon. Procuradora General el 29 de diciembre de 1989, que éste alegó no haber recibido la notificación de la sentencia dictada en el caso contra la señora Nazario, porque se había mudado dos (2) veces. No fue sino hasta que comenzó el procedimiento de ejecución de sentencia, que advino en conocimiento de la sentencia dictada. Declaración Jurada del Lcdo. García Ortiz, págs. 2–3. La declaración referida se admitió como evidencia por estipulación.

No obstante, en su réplica a la querella, el querellado ni niega ni acepta el haber recibido la notificación de la sentencia. Se limita a cuestionar la legitimación activa del Procurador General para levantar cargos por violación de sus deberes hacia los clientes, en ausencia de una querella por parte de la cliente afectada. No tiene razón. El hecho de que un cliente desista de instar querella contra su abogado no impide que ejerzamos nuestra facultad disciplinaria en este caso. Véase, *e.g.*, *In re Pagán Ayala*, 109 D.P.R. 712 (1980). Es la facultad inherente de este Tribunal, el velar por que los abogados que ha admitido al ejercicio de la profesión se conduzcan siempre dentro de los parámetros mínimos de responsabilidad y honradez recogidos por los cánones de ética y por nuestra interpretación de éstos.

ñora Nazario requirió sus servicios, él le advirtió que no podía representarla en el pleito en cobro de dinero, ya que aún le adeudaba honorarios por servicios prestados como su representante en el encausamiento por apropiación ilegal que surgiera de los mismos hechos. No obstante, explica que accedió a contestar la demanda y a comparecer a la vista del caso en su fondo. Aparentemente, la señora Nazario aceptó esa intervención limitada, y se llevó el expediente del caso para buscar otro abogado.[6]

Si el querellado entiende que unilateralmente podía dar por terminada su representación legal de la señora Nazario, se equivoca. Es una norma claramente establecida que, una vez un abogado asume ante los tribunales la representación legal de una persona, es su deber desplegar el más alto grado de competencia y diligencia posible, hasta que solicite al tribunal permiso para renunciar a esta representación *y éste formalmente le releve de responsabilidad.* Canon 20 del Código de Ética Profesional, *supra; In re Acosta Grubb,* 119 D.P.R. 595, 603 (1987); *Lluch v. España Service Sta.,* 117 D.P.R. 729, 752 (1986); *Matos v. Metropolitan Marble Corp.,* 104 D.P.R. 122, 125–126 (1975). El querellado jamás solicitó permiso para renunciar. Le obligaban, pues, todas las normas que rigen a los abogados en sus deberes hacia sus clientes. *In re Siverio Orta,* 117 D.P.R. 14, 17–18 (1986).

Mientras ostente la representación de su cliente, el abogado tiene el deber de informar al tribunal de todos los trámites y hechos que puedan afectar los casos pendientes. *In re Vélez Báez,* 128 D.P.R. 509 (1991). Ello incluye, naturalmente, sus cambios de dirección postal. Canon 19 del Código de Ética Profesional, *supra; In re Acosta Grubb,* supra, págs. 601 y 603–604; *J.R.T. v. Marex Const. Co., Inc.,* 103 D.P.R. 135, 141 (1974). Tiene también el deber de mantenerse informado de las decisiones del tri-

---

[6] Declaración Jurada del Lcdo. García Ortiz, pág. 15.

bunal en torno al caso que le ha sido encomendado. *Otero Fernández v. Alguacil*, 116 D.P.R. 733, 746 (1985).

El querellado claramente incumplió con estas obligaciones. Como resultado, no estaba al tanto de la sentencia dictada contra su cliente, y así aseveró como cierto un hecho que debió constarle como falso. Si no le constaba su falsedad, sólo a él le es imputable su desconocimiento.

Peor aún, aunque el querellado no tuviera conocimiento de la sentencia dictada, cuando menos debió recordar que había un pleito pendiente contra la vendedora, en el cual él era su representante legal. El deber del abogado de representar a sus clientes con diligencia y competencia, recogido en el Canon 18 del Código de Ética Profesional, *supra*, no tolera que los abogados, inadvertida o descuidadamente, olviden la existencia de los casos cuya representación ostentan. Ver, *e.g.*, *Alonso García v. Comisión Industrial*, 102 D.P.R. 752, 755 (1974). Allí dijimos que "[el abogado [tiene la obligación] de asegurarse de que sus expresiones respond[a]n a la verdad. Ello es esencial al decoro y a la honestidad profesional".

Los abogados deben conducirse siempre en forma digna y honorable. Canon 38 del Código de Ética Profesional, *supra*; *In re Nieves Rivera*, 124 D.P.R. 803 (1989); *In re Roldán Figueroa*, 106 D.P.R. 4, 12 (1977). La actuación del querellado al refrendar la última cláusula de la Declaración de Vendedores, en la cual aseveraba un hecho que debió constarle como falso, descubrió una actitud inadvertida, indiferente y descuidada hacia su gestión como abogado. Ver, *e.g.*, *In re Ríos Lugo*, 119 D.P.R. 568, 577 (1987). Su ignorancia y olvido en torno al curso de un caso cuya representación le fue encomendada mina la credibilidad de la clase togada, y así lesiona la dignidad de la profesión que ostenta. *Alonso García v. Comisión Industrial*, supra.

Censuramos esta conducta por parte del querellado. Le apercibimos de que, en el futuro, debe informar al tribunal

acerca de sus cambios de dirección, para que puedan enviársele las notificaciones de órdenes y decretos del tribunal. También le advertimos que debe esforzarse afirmativamente por mantenerse al tanto de los desarrollos de los casos bajo su responsabilidad que se hayen ante el tribunal. Este deber no cesa hasta tanto un tribunal no le releve formalmente de la representación de su cliente. Finalmente, le recordamos que no hay excusa posible que exima a un abogado del deber de tener constancia de los clientes que representa y de los casos que tiene pendientes ante el tribunal. De haber observado esa diligencia mínima, no hubiera cometido la aún más grave falta de aseverar como cierto un hecho que debió constarle como falso.

Por cuanto antecede, *decretamos la separación del querellado del ejercicio de la abogacía por un término de seis (6) meses. Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió, y desea hacer constar que la suspensión decretada debió limitarse a tres (3) meses. El Juez Asociado Señor Rebollo López no intervino.