per curiam:
Hoy atendemos una querella presentada contra el Ledo. José A. García Ortiz (el querellado), a quien se le imputó quebrantar los Cánones 12, 18, 19 y 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Por enten-der que ciertas actuaciones durante el proceso disciplinario *511 contradicen lo que prescriben los Cánones 9 y 12, supra, lo suspendemos inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.
I
El licenciado García Ortiz fue admitido al ejercicio de la abogacía el 1 de noviembre de 1978 y a la práctica de la notaría el 8 de diciembre del mismo año. En lo pertinente a la querella que nos ocupa, este asumió la representación legal de la Sra. Lucy A. López Martínez (la quejosa o se-ñora López), parte demandada en el caso KAC-1996-1264 sobre división de bienes gananciales atendido por el Tribunal de Primera Instancia, Sala de San Juan (TPI).(1) Ese foro judicial dictó sentencia en octubre de 2005, liquidando el haber ganancial y adjudicándole a la demandada $4,644.25.
Así las cosas, el 23 de enero de 2007 la señora López presentó una queja contra el querellado y adujo que estuvo varios meses tratando de localizarlo, sin resultado alguno.(2) Relató que mientras eso sucedía, su caso se en-contraba en la etapa final y que el TPI dictó sentencia en su contra debido a su inacción. También expuso que in-tentó conseguir el expediente de su caso para contratar a otro abogado, pero sus gestiones resultaron infructuosas.
Subsiguientemente, le notificamos la queja al quere-llado en dos ocasiones.(3) No fue hasta julio de 2007 que *512 este compareció y contestó las alegaciones de la quejosa.(4) Allí informó que no tenía reparo en entregar el expediente a la señora López y que le había delegado ese asunto a un tercero.
El 21 de agosto de 2007 referimos la queja a la Oficina del Procurador General. En cumplimiento con el referido, la Procuradora General Auxiliar requirió al letrado que fuera más responsivo y sustentara su contestación con la entrega de los documentos siguientes: la sentencia del TPI; el escrito con el que objetó esa sentencia; la moción en la que solicitó renunciar a la representación legal de la que-josa, y evidencia que acreditara la entrega del expediente. El querellado incumplió con dicho requerimiento, y luego de apercibirlo, le notificamos otra resolución en diciembre de 2007 para ordenarle que en 15 días entregara los documentos. El querellado tampoco cumplió con esa orden en el término dispuesto. No fue hasta pasado siete meses, el 20 de octubre de 2008, que compareció mediante una "Moción en cumplimiento de orden”. En su comparecencia detalló que “ ‘se hicieron gestiones adicionales en el tribunal con referencia a la Sentencia emitida y la propia Sra. Lucy López Martínez, el día 11 de enero de 2006, obtuvo copia certificada y me la hizo llegar a la oficina’ ”. Querella de 22 de mayo de 2009, pág. 3. Además, informó que le estaría remitiendo a la quejosa mediante correo certificado algunos documentos que quedaban de su expediente. Ante este marco fáctico, instruimos a la Oficina del Procurador General para que presentara la querella contra el licen-ciado García Ortiz. De esta forma, el 22 de mayo de 2009 se presentó la querella que aducía que el letrado violó los Cá- *513 nones 12, 18, 19 y 20 del Código de Ética Profesional, supra.
En cuanto al Canon 12, supra, apuntó que el letrado demostró una falta de comparecencia durante el trámite del caso de la quejosa, provocando una dilación innecesaria en la solución del este. Referente al Canon 18, supra, sos-tuvo que este no desplegó la diligencia necesaria para pro-teger los intereses de la quejosa y que por tal razón se dictó una sentencia adversa. Respecto al Canon 19, supra, pun-tualizó que el abogado nunca le informó a la quejosa sobre la sentencia que dictó el TPI ni mantuvo comunicación con ella durante la etapa final del caso. De otra parte, adujo que el letrado quebrantó el Canon 20, supra, al no entre-garle el expediente a la señora López, según le fue peticionado.
Aproximadamente un año después, el 25 de mayo de 2010, el licenciado García Ortiz contestó la querella ne-gando las imputaciones. En esa ocasión, afirmó que hizo entrega del expediente a la quejosa una vez finalizó el caso, pero que no le tomó recibo de entrega debido a la relación de confianza que existía entre ellos. Expresó, además, que la señora López siempre estuvo informada de todos los trá-mites procesales y que nunca cuestionó su desempeño pro-fesional ni manifestó interés de apelar, a pesar de conocer de su derecho a ello. También, acompañó su contestación con una copia de un recibo de facsímil de 27 de noviembre de 2007 que, según él, evidenciaba que le había enviado a la Procuradora los documentos previamente solicitados.
Consecuentemente, el 9 de agosto de 2010 nombramos a la Leda. Eliadís Orsini Zayas como Comisionada Especial (la Comisionada). Es pertinente esbozar ciertos incidentes procesales acaecidos previo a la vista en sus méritos. Veamos.
En la vista inicial, la Comisionada advirtió que ciertas imputaciones requerían de prueba testifical para garanti-zar el debido proceso de ley al querellado. Como la Procu- *514 radora informó que la quejosa estaba fuera de Puerto Rico, la Comisionada le instruyó a que coordinara la fecha cuando podría comparecer a prestar su testimonio. En oc-tubre de 2011 la Procuradora señaló que el caso estaba listo para atenderlo y se pautó la vista en sus méritos para el 7 y 8 de febrero de 2012. Según surge del Informe de la Comisionada,(5) esas fechas fueron seleccionadas acorde con la disponibilidad de la testigo.
Empero, no fue hasta el 27 de enero de 2012 que la Procuradora informó que la señora López no podría com-parecer y, sin especificar fecha alguna, solicitó la transfe-rencia de la vista.(6) Atendida esa petición, la Comisionada la declaró “no ha lugar”. Dispuso que, según el expediente del caso KAC-1996-1264, la quejosa demostraba un patrón de obstaculizar la pronta solución de las controversias. En consecuencia, declaró a la testigo no disponible conforme a la Regla 806(4) de Evidencia, 32 L.P.R.A. Ap. VI.
En vista de lo anterior, sin la comparecencia de la que-rellante, se celebró la vista en sus méritos. Oportuna-mente, la Procuradora solicitó la reconsideración de la or-den referida. Conforme surge del Informe de la Comisionada, en dos ocasiones esta le inquirió a la Procu-radora si disponía de alguna fecha alterna para que la que-josa pudiera comparecer.(7) Al contestar en la negativa, la Comisionada se reiteró en su determinación de declararla como testigo no disponible. De esta manera, la prueba de la Oficina del Procurador General consistió en el expediente del TPI del caso KAC 1996-1264, el Acta de Conocimiento Judicial que emitió la Comisionada en cuanto a ese expe-diente, *515 (8) el expediente de la querella y las comparecencias por escrito del querellado. Por su parte, el licenciado Gar-cía Ortiz no presentó prueba testifical.
Luego de evaluar y aquilatar la prueba vertida, el 12 de marzo de 2012 la Comisionada nos rindió su informe. Con-cluyó que los cargos presentados contra el letrado no se sostenían y recomendó el archivo definitivo de esta querella. Así también, intimó que la incertidumbre de mantener en statu quo este caso, por falta de disponibili-dad de la querellante para declarar, no representaba un adecuado manejo para una justa, rápida y económica ad-ministración de la justicia.
En consideración a estos antecedentes tácticos y con el beneficio de la comparecencia de la Oficina del Procurador General, procedemos a enunciar los fundamentos que dis-ponen de la querella disciplinaria.
II
Es sabido que la práctica de la profesión jurídica acarrea una delicada y seria función social, pues representa servicio, ética y ejemplo. Ramos Acevedo v. Tribunal Superior, 133 D.P.R,. 599 (1993). Por ello, el desempeño de todo letrado se rige por los cánones de ética profesional, que tienen el objetivo de promover los más altos principios de conducta decorosa para el beneficio de la profesión, de la ciudadanía y de las instituciones de justicia del país. In re Hernández Pérez I, 169 D.P.R. 91, (2006); In re Izquierdo Stella, 154 D.P.R. 732 (2001). Procederemos a exponer el derecho aplicable a las faltas éticas que se le imputaron al querellado.
*516 A. Puntualidad, y tramitación de las causas
El Canon 12 del Código de Ética Profesional, supra, impone a todos los miembros de la profesión jurídica el deber ineludible de tramitar las causas de forma responsable con la más excelsa puntualidad y diligencia. In re Nieves Nieves, 181 D.P.R. 25 (2011); In re Vélez Báez, 176 D.P.R. 201 (2009); In re Rosado Nieves, 159 D.P.R. 746 (2003). Este prescribe lo siguiente:
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protec-ción de los derechos sustanciales de su cliente. 4 L.P.R.A. Ap. IX, C. 12.
Conforme a esto, un abogado no puede ausentarse de una vista y provocar con ello su suspensión, sin el permiso del funcionario que la preside. In re Arroyo Villamil, 113 D.P.R. 568 (1982). Por lo tanto, la ausencia injustificada y voluntaria de un abogado a las vistas ya señaladas por el tribunal constituye una violación al referido canon. In re Ríos Pérez, 179 D.P.R. 630 (2010); In re Rosado Nieves, supra.
Sin embargo, los cánones de ética profesional no son, ni deben convertirse, en armas procesales adicionales para adelantar los intereses individuales de una de las partes en un caso. Lluch v. España Service Sta., 117 D.P.R. 729 (1986). La falta de diligencia que da lugar a sanciones éticas tiene que ser crasa, que denote falta de competencia o un menosprecio al sistema de administración judicial. Id. Normalmente, los tribunales de instancia deben atender y resolver las dilaciones o los incidentes procesales en un caso. Id.
*517 Por otro lado, el Canon 12, supra, requiere que los abogados presten atención minuciosa, sean diligentes y cumplan con las órdenes del tribunal, en particular cuando se trata de procedimientos relativos a la conducta profesional. In re Ruiz Hernández, 177 D.P.R. 963 (2010); In re Cuevas Velázquez, 174 D.P.R. 433 (2008); In re Ron Menéndez, 149 D.P.R. 105 (1999). En cumplimiento con este deber, los abogados están obligados a responder con premura y diligencia los requerimientos relacionados con quejas por conducta profesional; de no hacerlo, enfrentan sanciones disciplinarias serias. In re Martínez Class, 2012 TSPR 92, 184 D.P.R. Ap. (2012); In re Rosario Martínez, 184 D.P.R. 494 (2012); In re Pagán Pagán, 183 D.P.R. Ap. (2012). Esta obligación es independiente de los méritos de la queja presentada. In re Martínez Miranda, 160 D.P.R. 263 (2003).
Recordemos que el incumplimiento con los requerimien-tos de la Oficina del Procurador General es igualmente re-prochable y acarrea las mismas sanciones que desatender las órdenes de este Tribunal. In re Lasalle Pérez, 153 D.P.R. 368 (2001). Así por ejemplo, hemos sostenido que constituye una falta de respeto hacia los procedimientos del tribunal la indebida, irrazonable e inexcusable tar-danza de un abogado en formular su contestación a una querella. In re Vargas Soto, 146 D.P.R. 55 (1998).
B. Competencia del abogado y consejo al cliente
Por otra parte, el Canon 18 del Código de Ética Profesional, supra, establece, en lo pertinente, que:
Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuada-mente sin que ello apareje gastos o demoras irrazonables a su cliente o ala administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable.
*518 Sabemos que todo miembro de la comunidad togada tiene la obligación de defender diligentemente los intereses de su cliente. Por lo tanto, su gestión profesional debe llevarse a cabo aplicando en cada caso sus conocimientos y habilidades. In re Fernández de Ruiz, 167 D.P.R. 661 (2006); In re Martínez Miranda, supra.
Para determinar el alcance de la violación impuesta en este canon, es meritorio distinguir entre las diligencias re-queridas por el Canon 12 y el 18, supra. Según el profesor Steidel, el deber de diligencia que impone el Canon 12, supra, se refiere al deber de actuar oportunamente a favor de un cliente o respecto a las órdenes del tribunal. Véase S. Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, pág. 188. Por su parte, el deber de diligencia que requiere el Canon 18, supra, se dirige al deber de competencia, es decir, poseer los conocimientos jurídicos necesarios para llevar a cabo la gestión profesional. Steidel Figueroa, op. cit., pág. 188.
Por ello, todo abogado cuyo desempeño profesional no sea el adecuado, responsable, capaz ni efectivo, incurrirá en una clara violación al Canon 18, supra. In re Castro Colón, 177 D.P.R. 333 (2009). Reiteradamente he-mos señalado que los abogados deben asegurarse de que sus actuaciones estén encaminadas a lograr que las controversias se resuelvan de una manera justa, rápida y económica dentro de cualquier caso en que intervengan, por lo que su deber de diligencia profesional es incompatible con la desidia, despreocupación y displicencia. In re Rosa Rosa, 183 D.P.R. 759 (2011); In re Padilla Pérez, 135 D.P.R. 770 (1994). En otras palabras, el deber de diligencia constituye una obligación básica y elemental del abogado respecto de su cliente. In re Dávila Toro, 179 D.P.R. 833 (2010).
C. Información al cliente
Por otra parte, el Canon 19, supra, rige el deber de mantener informado al cliente; dispone:
*519 El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.
Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o ter-minar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.
El abogado que representa varios clientes con intereses co-munes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias.
Como vemos, el abogado debe mantener informado a su cliente de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. In re Cuevas Borrero, 185 D.P.R. 189 (2012); In re Muñoz, Morell, 182 D.P.R. 738 (2011); In re Cuevas Velázquez, supra. Sin embargo, esta obligación no se extiende a toda gestión que realice, sino solo a las gestiones importantes que no estén enmarcadas dentro del ámbito de discreción del abogado. In re Rivera Ramos, 178 D.P.R. 651 (2010). El factor esencial para determinar qué asuntos constituyen una gestión importante está vinculado con el grado de control que debe tener el cliente sobre su caso; es decir, la información que debe suministrar un abogado a su cliente es la que este último debe tener como dueño del caso. El profesor Steidel expone que el deber de informar se ex-tiende a toda información o aquellos asuntos que: (1) afecten o prolonguen la continuidad de un pleito; (2) de ser conocidos por un cliente, pudieran razonablemente llevarlo a finalizar el pleito; (3) aumente los costos del litigio; (4) impliquen una renuncia de derechos o de garantías procesales; o (5) tienen el potencial de exponerlo a consecuencias adversas ante terceros que no forman parte del pleito. Steidel Figueroa, op. cit., pág. 193.
Las decisiones adversas o favorables que finalicen par-cial o totalmente un caso se ubican en la primera categoría. Por ello, una sentencia es un asunto que debe informarse *520 inmediatamente al cliente. In re Cardona Ubiñas, 146 D.P.R. 598 (1998). La referida violación es independiente al deber de diligencia impuesto por el Canon 18, supra. In re Rivera Lozada, 176 D.P.R. 215 (2009).
A pesar de que estos pronunciamientos constituyen una guía sobre la información que todo abogado está obligado a revelar a su cliente, las circunstancias particulares de cada caso delimitarán el tipo de información que será impor-tante comunicar. Así pues, conviene puntualizar que dicho deber es del abogado para con el cliente, mas no del cliente para con el abogado. In re Castro Colón, supra; In re Muñoz, Morell, supra.
D. Renuncia de representación legal
Por su parte, el Canon 20, supra, consigna, en lo pertinente:
Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servi-cios que no se han prestado.
En armonía con lo anterior, cuando un abogado renun-cia a la representación legal de un cliente está obligado a entregarle su expediente y todos los documentos relaciona-dos con el caso. El expediente, al igual que la causa de acción, pertenece exclusivamente al cliente. In re Santos Rivera, 172 D.P.R. 703 (2007). Por lo tanto, no debe haber dilación alguna en su entrega una vez el abogado concluye las gestiones para las cuales fue contratado o cuando el cliente solicita dicha entrega. In re Rivera Ramos, supra; In re Ríos Ríos, 175 D.P.R. 57 (2008).
E. Rol del Comisionado Especial
La Regla 14(i) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-B, establece que corresponde a un Comisionado Especial, designado por el Tribunal, cele- *521 brar una vista para recibir la prueba. Le corresponde asi-mismo evaluar y dirimir la evidencia conflictiva. In re Iri-sarri Castro, 172 D.P.R. 193 (2007). Aunque el Tribunal Supremo no está obligado a aceptar el informe del Comi-sionado Especial, de ordinario sostiene las determinacio-nes de hechos realizadas por dicho funcionario, excepto cuando se demuestre prejuicio, parcialidad o error manifiesto. In re Torres Viñals, 180 D.P.R. 236 (2010). Esta doctrina de deferencia a las determinaciones del Comisio-nado Especial aplica cuando están basadas en prueba testifical. In re Cuevas Borrero, supra. Como sabemos, tal funcionario está en una posición similar al juzgador de ins-tancia y puede aquilatar mejor la prueba. íd. Sin embargo, cuando esas determinaciones estén basadas en la prueba documental que obra en el expediente, el tribunal revisor está en igual posición que el Comisionado Especial y, por ende, puede adoptar, modificar o rechazar tal informe. In re Torres Viñals, supra.
En ocasiones anteriores determinamos que la carga probatoria requerida en los procedimientos disciplinarios contra abogados es más acuciosa que el quantum de prueba requerido en los procedimientos civiles ordinarios, ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganar su sustento. In re Martínez Almodóvar, 180 D.P.R. 805 (2011). Por ello, el estándar requerido es el de prueba clara, robusta y convincente, que es más alto y sólido que el de la preponderancia de la prueba pero menos exigente y riguroso que el de prueba más allá de duda razonable. Id.
Por último, hemos afirmado que al determinar la sanción disciplinaria aplicable a un abogado es necesario considerar su reputación en la comunidad, el historial previo de sanciones disciplinarias, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras circunstan- *522 cias atenuantes o agravantes que medien de acuerdo con los hechos. In re Cuevas Borrero, supra; In re Vélez Barlucea, 152 D.P.R. 298 (2000).
rH i — I
Debemos ahora determinar si el querellado incurrió en las violaciones que se le imputaron. Previo a pasar juicio sobre esos asuntos, conviene pronunciarnos en cuanto al señalamiento del Procurador General, quien sostiene que el haber declarado a la quejosa como testigo no disponible afectó su derecho a ser oída.
Sobre este particular, en varias ocasiones la Comisio-nada celebró vistas procesales con el propósito de coordinar fechas para la vista en sus méritos y que la quejosa pu-diera comparecer a testificar. Precisamente, en respuesta a las fechas sugeridas por la Procuradora, desde octubre de 2011 se señaló la vista para febrero del año siguiente. Como se puede apreciar, la fecha para la vista se pautó con suficiente antelación. A pesar de ello, se le informó a la Comisionada que la testigo no estaría disponible para tes-tificar apenas una semana y media antes de la vista en su fondo. Otro incidente relevante es que si bien la Comisio-nada declaró “no ha lugar” la moción de suspensión pre-sentada por la Procuradora, un examen del Informe de-muestra que se exploró la posibilidad de pautar otra fecha posterior en que la querellante pudiera comparecer. Ello tampoco fue posible en ese momento, pues no se pudo se-ñalar otra fecha. Ante ese tracto procesal, colegimos que la Comisionada no incurrió en abuso de discreción en el ejer-cicio de sus funciones. Luego de ponderar los referidos in-cidentes, procede examinar las imputaciones éticas presen-tadas contra el querellado.
En la querella se alegó que el letrado violó el Canon 12, supra, al demostrar una falta de comparecencia durante los procedimientos del caso en el foro de primera instancia. *523 En atención a las circunstancias específicas de este cargo, convenimos con la Comisionada Especial en que el hecho de que el querellado no compareciera a una vista en el foro de primera instancia el 24 de abril de 2001 constituyó un incidente procesal intranscendente que debió ser atendido por ese foro judicial. En esa ocasión, tal incomparecencia no puso en riesgo la acción de la dienta ni causó dilaciones ulteriores. Cabe puntualizar que esa fue la única vista a la que el querellado no asistió durante el trámite de ese pleito. Ahora bien, corresponde analizar si la conducta des-plegada por el licenciado García Ortiz contraviene al Có-digo de Etica Profesional al no atender con diligencia las órdenes que se emitieron en el proceso disciplinario.
Surge del legajo que el 24 de junio de 2007 este Tribunal le refirió la queja a la Oficina del Procurador General, y el 6 de julio de ese mismo año el licenciado García Ortiz pre-sentó su contestación. Sin embargo, la Procuradora alegó que su contestación fue parca y poco responsiva. En vista de ello, el 21 de agosto de 2007 dictamos una orden para solicitarle información adicional y otra documentación. Un análisis del expediente refleja que el letrado no entregó los documentos. Ante ese incumplimiento, mediante Resolu-ción de 27 de diciembre de 2007, le ordenamos nuevamente que en un plazo de 15 días suministrara los documentos que se le habían requerido y fue apercibido de que sería objeto de sanciones disciplinarias si incumplía. Aun así, transcurridos siete meses, el licenciado García Ortiz tam-poco compareció ante nos. Finalmente, se presentó la que-rella el 22 de mayo de 2009 y no fue hasta el 20 de mayo de 2010, es decir, un año después, que el licenciado García Ortiz presentó su contestación y sostuvo que había entre-gado los documentos que se le fueron solicitaron. Para ello presentó una copia de lo que alega ser la prueba que evi-dencia el envió de los documentos vía facsímil. Sin embargo, el referido documento de envío no acredita de forma fehaciente su contención. Lo cierto es que desde agosto de *524 2007 se le había requerido que hiciera tal entrega y no cumplió con ello, demostrando un patrón de desidia a las órdenes de esta Curia.
Una vez más reiteramos que los abogados deben la más estricta observancia a las órdenes judiciales, más aún cuando se trata de procedimientos disciplinarios; de otro modo, pueden quedar sujetos al rigor de sanciones éticas. In re Nieves Nieves, supra. Así también, constituye una falta de respeto hacia los procedimientos del Tribunal la indebida, irrazonable e inexcusable tardanza de un abo-gado en formular su contestación a una querella. In re Vargas Soto, supra; In re Pérez Rodríguez, 115 D.P.R. 810 (1984); In re Díaz García, 104 D.P.R. 171 (1975). Es evi-dente que con su conducta el querellado incumplió con las órdenes de este Tribunal y con el deber de formular la con-testación a la querella, sin acreditar justa causa para tal proceder.
Por su parte, el Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que todo abogado deberá observar para con los tribunales una conducta que se caracterice por el mayor respeto y diligencia. En varias ocasiones se ha acudido a las disposiciones del mencionado canon para atender situaciones en las cuales los abogados hacen caso omiso a las órdenes de este Tribunal durante un proceso disciplinario. Véase In re Rosario Martínez, supra, pág. 498. Al interpretar el Canon 9, supra, este Foro ha señalado que la naturaleza de la función de abogado requiere una escrupulosa atención y obediencia a las órdenes de este Tribunal o de cualquier foro al que se encuentre obligado a comparecer, incluyendo la Oficina del Procurador General; más aún cuando se trata de conducta profesional. In re García Baliñas, 167 D.P.R. 125 (2006). Es por ello que de forma reiterada hemos puntualizado el deber ineludible que tiene todo abogado admitido a la profesión de contestar los requerimientos del Procurador General. In re Irizarry Maldonado, 172 D.P.R. 306 (2007).
*525 Por lo tanto, todo abogado tiene la obligación de responder prontamente a los requerimientos que se le cursan, independientemente de los méritos de la queja presentada en su contra. In re Rodríguez Bigas, 172 D.P.R. 345 (2007). Ello, puesto que el desatender las comunicaciones relacionadas con procedimientos disciplinarios tiene el mismo efecto disruptivo de la función reguladora sobre la profesión que cuando se desatiende una orden emitida directamente por el Tribunal. íd.; In re Ríos Acosta I, 143 D.P.R. 128, 135 (1997). En consecuencia, colegimos que el letrado infringió los Cánones 9 y 12, supra.
En cuanto a la infracción al Canon 18, supra, consta en el expediente un acta de conocimiento judicial que resume los incidentes procesales del caso en el foro de primera ins-tancia y refleja el desempeño del querellado durante el trá-mite judicial. Veamos.
El 1 de diciembre de 2000 el querellado presentó una moción con la cual se opuso a liquidar los bienes ganancia-les hasta que se dilucidara la procedencia ganancial de unos honorarios que el esposo de la quejosa había recibido mientras estaban casados. Tiempo después, presentó otra moción informativa sobre la venta de un inmueble ganancial. Para fines de la división de los bienes ganancia-les, se nombró un contador partidor, con quien se reunió en varias ocasiones. Una vez presentado el informe del conta-dor, el letrado solicitó tiempo para su estudio. Luego, el 10 de mayo de 2005, presentó una moción informando que aún esperaban reunirse con el contador, ya que ese informe no especificaba los honorarios que el demandante cobraría. Finalmente, se aprobó el Informe del contador partidor, y el 20 de octubre de 2005 el foro primario emitió una sentencia. Posteriormente, el 16 de noviembre el quere-llado presentó oportunamente una moción de reconsidera-ción arguyendo que no se habían atendido los señalamien-tos hechos al contador respecto al informe.(9)
*526 De los hechos esbozados se deduce que el desempeño del licenciado García Ortiz fue adecuado a fin de proteger los intereses de la quejosa en la liquidación de los bienes gananciales. Este compareció a las vistas señaladas y se mantuvo al tanto de las alegadas incongruencias que refle-jaba el informe del contador partidor. En esa gestión, el letrado se reunió en varias ocasiones con el contador para conciliar unas diferencias que existían en cuanto a la cuota que le correspondería a su dienta. Todo ello fue posterior-mente ponderado y adjudicado por el TPI. Por consi-guiente, concluimos que el licenciado García Ortiz no se apartó del citado precepto.
Por otro lado, también se aduce que el querellado infrin-gió el Canon 19, supra, al no notificar inmediatamente a la quejosa la sentencia dictada en su contra y no mantener comunicación con ella durante la etapa de ejecución de la sentencia. La Procuradora sostiene que no fue hasta el 11 de enero de 2006 que la quejosa supo de la referida senten-cia, al visitar el tribunal para obtener una copia certificada de esta. Esta alegación surge de una expresión que hiciera el propio querellado en una moción que presentó durante este procedimiento(10) manifestando que “ ‘se hicieron ges-tiones adicionales en el tribunal con referencia a la Senten-cia emitida y la propia Sra. Lucy López Martínez, el día 11 de enero de 2006, obtuvo copia certificada y me la hizo llegar a la oficina’ ”. Querella, supra, pág. 3.
Ahora bien, para probar este cargo y garantizar el de-bido proceso de ley del querellado era necesario el testimo- *527 nio de la señora López. Como vimos, en sus comparecen-cias el querellado alegó que mantuvo a la quejosa al tanto de todo lo que ocurría en el caso. Sin embargo, en cuanto a ese particular, la credibilidad de la quejosa no pudo ser apreciada por la Comisionada y en el expediente no obra prueba alguna dirigida a sostener este cargo. Como sabe-mos, es doctrina reiterada que las meras alegaciones no constituyen prueba. En vista de ello, ante la ausencia de prueba para sustentar que el querellado faltó al deber de notificarle a su dienta la sentencia y mantenerla al tanto de los procedimientos, es forzoso concluir que el querellado no faltó al deber ético que le exige el Canon 19, supra.
Nos resta por resolver si el licenciado García Ortiz que-brantó el Canon 20, supra. En su contestación a la queja, el querellado sostuvo que no tenía reparo en entregar el ex-pediente del caso a la quejosa y que el asunto se delegó a otra persona. Empero, al contestar la querella afirmó que había entregado el expediente una vez finalizó el caso, pero que no tomó recibo de la entrega por la relación de con-fianza que existía con su dienta. Aun cuando le ordenamos mediante Resolución de 27 de diciembre de 2007 que acre-ditara la entrega de dicho expediente, el querellado hizo caso omiso. Somos del criterio que el hecho de no responder a los requerimientos de este Tribunal y las inconsistencias en sus contestaciones son hechos que, si bien no constitu-yen prueba en cuanto a la alegación que se incorporó en la queja, denotan una conducta censurable para un miembro de esta profesión. El querellado nunca ofreció respuestas precisas en cuanto a lo sucedido con el expediente de la quejosa. Una vez más, de su conducta se deriva una reite-rada dejadez y falta de atención a los requerimientos de la Oficina del Procurador General. Esas actuaciones son con-trarias a los requisitos que encarna el Canon 12, supra.
*528 IV
Por los fundamentos que anteceden, concluimos que el Ledo. José A. García Ortiz infringió los Cánones 9 y 12 del Código de Ética Profesional, supra, al provocar dilaciones sin justa causa en el proceso disciplinario. Su conducta du-rante este procedimiento, ignorando las órdenes emitidas por este Tribunal, constituye una afrenta a las normas éti-cas que rigen la profesión jurídica en Puerto Rico. Como mencionamos en In re Asencio Márquez, 183 D.P.R. 659, 664 (2011),
[e]ste tribunal no flaqueará en suspender a los togados que demuestren un reiterado incumplimiento con los términos finales y perentorios impuestos para cumplir con nuestras órdenes. El hecho de que esta Curia esté en disposición de conceder prórrogas para lograr el cumplimiento con nuestras órdenes, en aras de corregir deficiencias al ejercicio de la pro-fesión legal, no impide nuestra función disciplinaria. Tampoco exonera al letrado de las consecuencias de las violaciones éti-cas en que incurra ante nuestro Foro.
Atendido lo anterior, consideramos como agravante el hecho de que el querellado fue suspendido de la profesión en ocasiones anteriores. Véanse: In re García Ortiz, 176 D.P.R. 123 (2009); In re García Ortiz, 133 D.P.R. 666 (1993). En consecuencia, lo suspendemos inmediatamente del ejercicio de la abogacía y la notaría por el término de seis meses.
El querellado notificará a sus clientes que, por motivo de la suspensión, no puede continuar con su representa-ción legal y les devolverá los expedientes de los casos pen-dientes y los honorarios recibidos por trabajos no realizados. Asimismo, informará de su suspensión a cual-quier Sala del Tribunal General de Justicia o a cualquier foro administrativo donde tenga algún caso pendiente.
Por último, tiene la obligación de acreditar y certificar ante este Tribunal, en el término de treinta días, que cum- *529 plió con lo antes señalado. El cumplimiento con estos de-beres se notificará también al Procurador General. El Al-guacil de este Tribunal incautará inmediatamente la obra y el sello notarial del abogado para trámites ulteriores.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

 Este pleito inició para el 1996 y el querellado asumió la representación de la señora López para el 1998.

 En su queja relató que lo llamó varias veces a su número telefónico y lo visitó a su oficina. Indicó que luego se percató de que el querellado tenía una localidad nueva, donde tampoco, según alegó, pudo contactarlo.

 El 26 de febrero y el 30 de abril de 2007. Dado a que no la contestó, el 21 de junio de ese año emitimos una Resolución en la que le apercibimos que dicho proce-der podría acarrear sanciones disciplinarias.

 En su moción se limitó a señalar que no tenía reparo en entregarle el expe-diente a la quejosa, que ésta le debía honorarios, que había solicitado la renuncia a esa representación legal y que había solicitado la reconsideración de la sentencia que se dictó en el Tribunal de Primera Instancia, Sala de San Juan (TPI). En un posterior informe rendido por la Procuradora General Auxiliar, se detalla que esta com-parecencia no había sido responsiva a las alegaciones de la quejosa.

 Informe de la Comisionada Especial rendido el 12 de marzo de 2012.

 Según surge de la orden emitida el 31 de enero de 2012 por la Comisionada Especial, la Procuradora acompañó la moción con un certificado médico. No obstante, la Comisionada apuntó que no se podía leer la firma del médico ni aparecía su número de licencia para poder identificarlo. Aludió la Comisionada Especial que ese documento aparentaba ser una hoja de receta.

 Véase Informe de la Comisionada Especial, págs. 8-9.

 Cabe señalar que, con relación al expediente del TPI, la Comisionada Especial había notificado un acta de conocimiento judicial, la cual fue aceptada por las partes. Véanse: Moción Informativa y en Cumplimiento, presentada por la Procura-dora General el 14 de abril de 2011; Moción presentada por el querellado el 7 de abril de 2011. En esa acta la Comisionada detalló minuciosamente todos los eventos pro-cesales de ese caso, haciendo referencia a las intervenciones que tuvo el querellado.

 La Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. V, vigente para ese entonces, en lo pertinente, dispone: “La parte adversamente afectada por una orden *526 o resolución del Tribunal de Primera Instancia podrá, dentro del término de cumpli-miento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, presentar una moción de reconsideración de la orden o resolución”. La Procuradora General aduce que la moción de reconsideración se presentó fuera de término. No le asiste la razón. El tribunal emitió su Sentencia el 20 de octubre de 2005 y fue notificada y archivada en autos el 2 de noviembre de 2005. En virtud de ello, el querellado sometió la moción de reconsideración el 16 de noviembre de 2005. A tenor con las Reglas de Procedimiento Civil, tenía hasta el 17 de noviembre de 2005 para someter la referida moción, por lo cual fue presentada oportunamente.

 Véase Moción en Cumplimiento de Orden de 20 de octubre de 2008.