*In re* JORGE MORENO FRANCO.

*Número:* TS-8398      *Resuelto:* 19 de enero de 2006

*Carmen H. Carlos,* directora de la Oficina de Inspección de Notarías; *Jorge Moreno Franco,* abogado que comparece por derecho propio.

PER CURIAM: En el presente caso, reafirmamos nuestro rechazo hacia la indiferencia de algunos abogados de responder a los requerimientos formulados por este Tribunal dentro de un proceso disciplinario. Esta testarudez y contumacia de los abogados de no cumplir con nuestras órde-

nes provocan que, en ocasiones, los procedimientos disciplinarios culminen en suspensiones indefinidas, aún sin entrar en los méritos de la queja en cuestión. La situación de autos es una de ellas.

I

El Lcdo. Jorge Moreno Franco fue admitido a la práctica de la abogacía el 13 de agosto de 1986 y al ejercicio del notariado el 31 de mayo de 1988. Según los informes de la Oficina de Inspección de Notarías (ODIN), los Protocolos del referido notario correspondientes a 1992, 1994, 1995 y 1996 fueron aprobados como correctos. Sin embargo, los correspondientes a 1990, 1991, 1993, 1997, 2000, 2001 y 2002 quedaron pendientes de aprobación debido a serias deficiencias señaladas en la inspección.[1] Al respecto, el 8 de diciembre de 2003 la ODIN cursó un informe a este Tribunal del cual surgen los hechos reseñados a continuación.[2]

El 27 de noviembre de 2000 se rindió un primer informe de deficiencias en los Protocolos del licenciado Moreno Franco correspondientes a 1990, 1991, 1993 y 1997. En conformidad con el proceso dispuesto en el Reglamento Notarial, la ODIN envió copia del informe al abogado de epígrafe en que le concedía el término de quince días para notificar por escrito cualquier objeción que tuviera con los señalamientos. El licenciado Moreno Franco informó haber corregido las faltas señaladas en el informe. Sin embargo, según el segundo informe de deficiencias en los Protocolos del 2000, 2001 y 2002, éstas permanecen aún sin corregir.

---

[1] Durante 1989, 1998 y 1999 el notario reportó a la Oficina de Inspección de Notarías (ODIN) no haber autorizado ningún instrumento público.

[2] El informe señala el estado de la notaría del licenciado Moreno Franco e indica las deficiencias que surgen de sus Protocolos. Entre las deficiencias señaladas se encuentran: la cancelación de aranceles incompletos, la falta de firmas e iniciales de comparecientes, la falta de acreditación de facultades representativas, la falta de los antecedentes registrales de los inmuebles, la falta de firma y rúbrica del notario, entre otras deficiencias.

Este segundo informe surgió a raíz de una comunicación del Lcdo. Andrés L. Córdova recibida por la ODIN. El licenciado Córdova solicitó la intervención de esa oficina para obtener copia de una escritura autorizada por el licenciado Moreno Franco, debido a que éste había hecho caso omiso a sus requerimientos. En la misiva dirigida a la ODIN se alega que el licenciado Moreno Franco autorizó una escritura de compraventa que contiene una simulación contractual dolosa en la que se pretendió segregar y traspasar ilícitamente un solar a la Lcda. Marisabel Piñero Martínez, ex esposa del notario autorizante, sin el consentimiento de sus dueños.

Ante la seriedad de las imputaciones, la ODIN impartió instrucciones a su Inspectora de Protocolos para que examinara la obra notarial del licenciado Moreno Franco. Para coordinar una cita con el notario, la inspectora se comunicó al número de teléfono que obra en los archivos de la ODIN. La persona que respondió a la llamada fue la Lcda. Marisabel Piñero Martínez, quien informó que si bien su oficina era reportada por el licenciado Moreno Franco como su estudio de notaría, éste no tenía oficina en propiedad. La licenciada Piñero Martínez aclaró a la ODIN que el licenciado Moreno Franco se encontraba fuera de Puerto Rico desde hacia algún tiempo recibiendo tratamiento médico y que desconocía su fecha de regreso. También notificó que su obra notarial se encontraba junto a la de ella en su oficina, pero que el licenciado Moreno Franco no la había designado como notario sustituto.

Así las cosas, autorizamos la incautación de la obra notarial del licenciado Moreno Franco, la cual fue inspeccionada. De la revisión de la obra incautada surgieron los señalamientos objeto del segundo informe de deficiencias. Durante el proceso de inspección de los Protocolos incautados, se obtuvo el original de la escritura que

se alega contenía la compraventa simulada y fraudulenta, la cual adolece de graves deficiencias e irregularidades.(³)

En el informe del 8 de diciembre de 2003, presentado por la ODIN a este Tribunal, se le imputan al licenciado Moreno Franco violaciones crasas a la Ley Notarial y su reglamento.(⁴) El 5 de febrero de 2004 dictamos una resolución en la que concedimos al licenciado Moreno Franco el término de veinte días para que se expresara sobre el informe de la ODIN y corrigiera las deficiencias señaladas. Ante la incomparecencia del licenciado Moreno Franco, el 19 de marzo de 2004 emitimos otra resolución mediante la cual se le concedió un término final de veinte días para cumplir con la Resolución de 5 de febrero de 2004, bajo apercibimiento de que su incumplimiento podría conllevar su suspensión inmediata del ejercicio de la abogacía y la notaría. Esta resolución fue notificada personalmente el 10 de mayo de 2004, a través de un alguacil del Tribunal. Mediante un escrito de 4 de junio de 2004, el licenciado Moreno Franco solicitó una prórroga de quince días adicionales para corregir las deficiencias encontradas en sus Protocolos, debido a que éstos se hallaban en la ODIN en San Juan, mientras que él residía en Rincón. Este Tribunal le concedió al notario la prórroga de quince días adicionales para cumplir con la resolución del 5 de febrero de 2004.

El 12 de agosto de 2004 el licenciado Moreno Franco presentó una moción informativa solicitando una prórroga

---

(³) El 20 de mayo de 2003 se presentó una demanda de nulidad por simulación absoluta de contrato contra los licenciados Piñero Martínez y Moreno Franco.

(⁴) La ODIN concluyó que la conducta del licenciado Moreno Franco demuestra un alto grado de descuido y menosprecio a su función como notario. Señaló su incumplimiento con su deber de custodio de su obra notarial, al abandonar sus Protocolos en una oficina que no era la suya y al no notificar a la ODIN su cambio de dirección de oficina y residencia. Tampoco designó un notario sustituto. Por último, concluyó que las serias deficiencias notariales manifestadas en su obra notarial reflejan "un patrón de conducta en abierto menosprecio a los postulados de la fe pública y ética profesional".

adicional, ya que se encontraba recuperándose de un procedimiento quirúrgico de extracción de hernia y resección de intestino. También informó, mediante una segunda moción informativa, las medidas que tomaría para cumplir con lo señalado en el informe de la ODIN, además de que próximamente se estaría reuniendo con uno de los inspectores de dicha oficina para corregir las deficiencias pendientes. El 16 de agosto de 2004 concedimos un término adicional de quince días, a partir de la fecha en que se diera de alta al licenciado Moreno Franco, para cumplir con la Resolución de 5 de febrero de 2004.

El 28 de enero de 2005 la ODIN nos informó que el licenciado Moreno Franco no compareció a la cita acordada para el 15 de octubre de 2004 y que tampoco se había comunicado con la inspectora para coordinar una nueva fecha para la corrección de las deficiencias pendientes. Así las cosas, el 4 de marzo de 2005 emitimos otra resolución en la que concedimos al licenciado un término final de veinte días para que cumpliera con las resoluciones del 5 de febrero de 2004 y el 16 de agosto de 2004. También se le ordenó mostrar causa, dentro de ese término, por la cual no debía ser suspendido del ejercicio de la profesión por no cumplir con nuestras resoluciones y por las múltiples deficiencias de su obra notarial. Por último, se le apercibió nuevamente que el incumplimiento con esta resolución conllevaría su suspensión inmediata del ejercicio de la abogacía y la notaría sin ulterior procedimiento. El licenciado Moreno Franco respondió a la Resolución de 4 de marzo de 2005 con una moción informativa, presentada el 17 de mayo de 2005, en la que solicitó una prórroga adicional para corregir sus Protocolos. Adujo que no había cumplido con nuestros requerimientos porque había sido sometido a un procedimiento quirúrgico del abdomen.

Finalmente, en una Resolución de 20 de mayo de 2005, concedimos al licenciado Moreno Franco un término final de treinta días para que mostrara causa por la cual no

debía ser suspendido del ejercicio de la profesión, debido tanto a su condición de salud como al reiterado y grave incumplimiento con sus deberes notariales y nuestras resoluciones. Se le apercibió nuevamente que su incumplimiento conllevaría las sanciones disciplinarias correspondientes. Sin embargo, el licenciado Moreno Franco no ha cumplido con nuestra Resolución de 20 de mayo de 2005. Han pasado cerca de siete meses desde su última comparecencia y aún no cumple con las múltiples resoluciones de este Tribunal.

De todo lo antes expuesto podemos colegir que, a pesar de nuestros apercibimientos y de las prórrogas concedidas, el licenciado Moreno Franco continúa con una conducta displicente de dejadez, indiferencia y falta de diligencia en cuanto a nuestras órdenes.

## II

Reiteradamente hemos resuelto que es obligación ineludible de todo abogado responder diligentemente a los requerimientos de este Tribunal, de la Oficina del Procurador General, de la Comisión de Ética del Colegio de Abogados y de la Oficina de Inspección de Notarías. *In re Rivera Irizarry*, 155 D.P.R. 687 (2001). Igualmente, hemos enfatizado que "no toleraremos la incomprensible y obstinada negativa de un miembro de la profesión de cumplir con nuestras órdenes y requerimientos". *In re Laborde Freyre I*, 154 D.P.R. 112, 115 (2001).

El incumplimiento por parte de un abogado con nuestras órdenes en el trámite de una queja constituye una falta separada e independiente de los méritos de dicha queja y acarrea la imposición de severas sanciones disciplinarias, pues se trata de conducta que de por sí contraviene las normas éticas que rigen el ejercicio de la abogacía. Incluso, cuando la queja resulte inmeritoria, el abogado puede quedar sujeto a sanción disciplinaria si demuestra

dejadez e inacción durante el trámite de la queja. *In re Vargas Soto*, 146 D.P.R. 55, 61–62 (1998).

█ Desatender las comunicaciones relacionadas con procedimientos disciplinarios "tiene el mismo efecto disruptivo de nuestra función reguladora de la profesión que cuando se desatiende una orden emitida directamente por este Tribunal". *In re Ríos Acosta I*, 143 D.P.R. 128, 135 (1997). La naturaleza pública que reviste la profesión de abogado le impone a éste "[e]l compromiso de mantener y contribuir a un orden jurídico íntegro y eficaz, para lograr la más completa confianza y apoyo de la ciudadanía ...". Íd., pág. 135. El Canon 12 del Código de Ética Profesional exige "desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones" en la tramitación de las causas. 4 L.P.R.A. Ap. IX. Este deber profesional "se extiende no sólo a la esfera de la litigación de causas sino a la jurisdicción disciplinaria de este foro". *In re Ríos Acosta I*, supra, pág. 135.

█ Un patrón de dejadez y de incumplimiento irrazonable e inexplicable con nuestras órdenes es indicativo "de una falta de respeto hacia los procedimientos del Tribunal". *In re Vargas Soto*, supra, pág. 62. Por lo tanto, incumplir las órdenes y los requerimientos de este Tribunal constituye una clara violación al Canon 9 del Código de Ética Profesional, que señala, en lo pertinente: "El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto." 4 L.P.R.A. Ap. IX. Según hemos mencionado, el deber que impone el referido Canon 9 "incluye el estricto cumplimiento de las órdenes y resoluciones de este Tribunal, sobre todo, en lo concerniente a nuestra jurisdicción disciplinaria". *In re Salichs Martínez*, 131 D.P.R. 481, 490 (1992).

## III

Desde el 5 de febrero de 2004, fecha en que este Tribunal ordenó por primera vez al licenciado Moreno Franco corregir las faltas señaladas, éste debió responder con diligencia. Transcurrido más de un año desde nuestra primera resolución al respecto, el licenciado Moreno Franco sólo ha respondido con breves y escuetos escritos, solicitando constantemente prórrogas a los términos concedidos para cumplir. No obstante los requerimientos de este Tribunal, el licenciado Moreno Franco desatendió los términos concedidos para cumplir con nuestras órdenes. No se justifica esta dilación y omisión total en cumplir con los requerimientos de este Tribunal; era su deber responder y actuar conforme a lo ordenado. El licenciado Moreno Franco estaba apercibido de la sanción disciplinaria que hoy dictamos, según surge de nuestras resoluciones debidamente notificadas. Tales apercibimientos evidentemente han sido crasamente desoídos.

La actitud de dejadez e indiferencia manifestada por el licenciado Moreno Franco hacia este Tribunal ha interferido indebidamente con nuestra función disciplinaria. Su actitud persistente de incumplir con nuestras órdenes caracteriza un absoluto menosprecio de éstas. La conducta del licenciado a lo largo del proceso es, de por sí, razón suficiente e independiente para imponerle las más severas sanciones disciplinarias. Procede, por lo tanto, *separar de forma inmediata e indefinida del ejercicio de la profesión de la abogacía y de la notaría al Lcdo. Jorge Moreno Franco, hasta que otra cosa disponga este Tribunal.*

*Se dictará sentencia de conformidad.*