EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>Frederic Chardón Dubós | 2014 TSPR 84<br><br>191 DPR \_\_\_\_ |

Número del Caso:     AB-2010-264
                     AB-2013-158


Fecha: 30 de junio de 2014


Materia: La suspensión será efectiva el 2 de julio de 2014 fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In Re:

    Frederic Chardón Dubós           **AB-2010-0264**    Conducta
                                       **AB-2013-0158**    Profesional

**PER CURIAM**

San Juan, Puerto Rico, a 30 de junio de 2014.

Esta Curia constantemente ha enfatizado sobre la obligación que tienen los abogados de cumplir cabalmente con todos los cánones de ética que rigen nuestra profesión. Sin embargo, una vez más nos vemos obligados a suspender a otro miembro de la clase togada del ejercicio de la abogacía y la notaría por incumplir con las órdenes de este Tribunal.

I

El Lcdo. Frederic Chardón Dubós (querellado) fue admitido al ejercicio de la abogacía el 18 de noviembre de 1980 y, posteriormente, al ejercicio de la notaría el 23 de noviembre de 1984. Por los fundamentos expuestos a continuación, ordenamos la suspensión inmediata e indefinida del licenciado Chardón Dubós del ejercicio de la abogacía y de la notaría.

El 8 de octubre de 2010 Borinquen Community Federal Credit Union (BCFCU) mediante su gerente, la Srta. Sylvia Ramírez Vádiz, presentó una queja contra el licenciado Chardón Dubós. Alegó que el querellado fue abogado de dicha institución desde finales de 2006 hasta principios de 2008, representándolos en casos de cobro de dinero y, además, fungía como notario en los cierres hipotecarios que se realizaban.

En la queja BCFCU expresó que terminó la relación profesional con el licenciado Chardón Dubós por sus reiterados incumplimientos. Informó que varios casos fueron archivados en los tribunales por su inactividad y su incumplimiento, produciendo grandes pérdidas económicas.

Ahora bien, los hechos que motivaron la queja son los siguientes. El 30 de octubre de 2007 Zebulon Vance Knott y Nancy Black Service otorgaron un pagaré hipotecario de $50,000 a favor de BCFCU ante el

licenciado Chardón Dubós. El pagaré hipotecario fue garantizado con hipoteca constituida mediante escritura pública otorgada el mismo día. No obstante, BCFCU arguyó que a pesar de haberle pagado al licenciado los honorarios, sellos y gastos de inscripción en el Registro de la Propiedad (Registro), al momento de la queja la escritura aún no constaba inscrita en el Registro. Así las cosas, BCFCU no contaba con una garantía hipotecaria ni colateral a su favor en caso de incumplimiento de pago de los deudores. Además, la compañía aseguradora de título, San Juan Abstract/Stewart Title Insurance, no había autorizado la expedición del seguro de título a favor de BCFCU por la falta de inscripción de la escritura hipotecaria. Ante esta situación, BCFCU alegó que trató de comunicarse en varias ocasiones con el licenciado Chardón Dubós para que inscribiera la escritura e incluso le ofreció la alternativa de hacer la gestión de recoger copia certificada de la escritura para ellos ir a inscribirla al Registro. El querellado nunca les respondió.

El 25 de octubre de 2010 le notificamos al licenciado la queja presentada y le concedimos diez días para que contestara la misma. Debido a que transcurrió un año sin la comparecencia del querellado, el 19 de octubre de 2011 se le envió una segunda notificación otorgándole nuevamente diez días para que contestara la

queja. El 14 de noviembre el licenciado compareció y alegó había referido el asunto a un abogado y pensaba que se había resuelto la controversia, por lo tanto, solicitó diez días adicionales para contestar la queja. Le concedimos la prórroga.

Finalmente, el 27 de diciembre de 2011 el querellado presentó la contestación a la queja. No obstante, únicamente indicó que el 6 de octubre de 2011 acudió al Registro e inscribió la escritura hipotecaria y, por lo tanto, entendía que eso finalizaba la queja.

Inconformes con la contestación del licenciado Chardón Dubós, el 27 de enero de 2012 le concedimos diez días para que contestara las alegaciones de la queja. Por su incomparecencia, se le envió una segunda notificación el 16 de marzo y luego una tercera notificación el 27 abril, en la cual se le advertía que tenía diez días improrrogables para contestar. Así, el querellado compareció el 25 de mayo exponiendo los mismos argumentos que expresó en la primera contestación.

Luego de examinar el expediente, referimos la queja a la Oficina del Procurador General (Procurador General) para que realizara la investigación correspondiente y rindiera un informe. Debido a varias dudas que le surgieron al Procurador General, este le requirió información adicional a ambas partes y les indicó que tenían hasta el 17 de enero de 2013 para entregar dicha

información. En la fecha antes mencionada, BCFCU se comunicó con el Procurador General y solicitó una prórroga de veinte días adicionales. El Procurador General concedió la misma y le notificó a ambas partes que tenían hasta el 4 de febrero para entregar la información. Ahora bien, a pesar de la prórroga concedida el licenciado Chardón Dubós no presentó la información solicitada, por lo que el Procurador General le concedió un término final e improrrogable de diez días. Vencido el término el Procurador General compareció ante esta Curia solicitando un remedio. El 11 de abril de 2013 le notificamos al querellado que tenía diez días para responder los requerimientos del Procurador General y se le apercibió que la no comparecencia podía conllevar sanciones disciplinarias. Finalmente el 21 de mayo el licenciado compareció y presentó la información requerida por el Procurador General.

Así las cosas, el Procurador General continuó su investigación. Ahora bien, nuevamente le surgieron interrogantes y le requirió información adicional a las partes. Les notificó que tenían hasta el 23 de julio de 2013 para entregar la misma. Transcurridos dos meses sin que compareciera el querellado, el 25 de septiembre el Procurador General acudió ante este Tribunal. Antes de expresarnos, el Lcdo. Miguel A. Ponce Ponce,

representante del querellado, compareció y expresó que había estado enfermo y solicitó una prórroga de diez días. El 18 de octubre de 2013 concedimos la prórroga solicitada. Sin embargo, el 3 de diciembre de 2013 compareció el Procurador General notificando que el licenciado Chardón Dubós aún no había comparecido. Ante esta situación, el 12 de marzo de 2014 le condecimos al querellado un término de diez días apercibiéndolo que el no comparecer podría conllevar sanciones disciplinarias. Al día de hoy aún no ha comparecido.

Por otro lado, el 15 de junio de 2011 la Sra. Heidi Torres Jiménez presentó una queja contra el licenciado Chardón Dubós ante el Procurador General.[1] El 3 de abril de 2013 el Procurador General compareció ante esta Curia alegando que se le notificó de la queja al licenciado los días 24 de junio y el 8 y 21 de julio de 2011 y se le ordenó contestar la misma. El 23 de julio el licenciado solicitó una prórroga de treinta días la cual fue concedida. Al no recibir respuesta del licenciado, el 2 de noviembre de 2011 el Procurador General le envió una notificación con un término final e improrrogable. Sin embargo, aún no ha contestado la queja.

Inconforme con las alegaciones del Procurador General, el licenciado compareció ante este Tribunal y expresó que sí se había mantenido en comunicación con el

---

[1] Esta queja se convirtió en el AB-2013-158.

Procurador General y solicitó la desestimación de la queja. Luego de evaluar el expediente, el 13 de diciembre de 2013 emitimos una resolución en la cual declaramos no ha lugar la moción de desestimación y le concedimos al licenciado un término final e improrrogable de quince días para contestar la queja, apercibiéndole que el no contestar podía conllevar sanciones disciplinarias. Al día de hoy aún no ha contestado la queja.

**Señalamientos de la ODIN**

Por último, el 3 de junio de 2014 compareció ante esta Curia la Oficina de Inspección de Notarías (ODIN). En su moción arguyó que en diciembre 2011 comenzó el proceso de inspección de la obra notarial del licenciado Chardón Dubós. La inspectora de protocolos y notarías, la Lcda. Margarita Portalatín Aguilar, realizó un informe en el cual encontró varias deficiencias. Entre las deficiencias señaladas se encontraban: deficiencias arancelarias, necesidad de reconstruir protocolos, no rindió los informes de actividad notarial mensual y anual. El 23 de mayo de 2012 se realizó un informe de la obra notarial del licenciado, el cual fue enviado al querellado por correo certificado con acuse de recibo. Se le concedieron quince días al licenciado para que se expresara y comenzara a subsanar las deficiencias. Luego de un año sin tener comunicación con el licenciado, ODIN

le envió nuevamente el informe y le concedió un término para subsanar las deficiencias. No obstante, ODIN alegó que este ha hecho caso omiso a sus requerimientos y no ha subsanado las faltas. El 23 de junio de 2014, dos años luego del Informe enviado por la Oficina de Inspección de Notarías, el licenciado Chardón Dubós presenta la Moción titulada *Respuesta a Moción Solicitando Auxilio del Tribunal para Incautación de Obra Notarial y en Solicitud de Remedios.* En la misma, admite que no ha mantenido a la Oficina de Inspección de Notarías informada y solicita tiempo para corregir deficiencias. Por otro lado, la fianza notarial del licenciado expiró el 6 de marzo de 2013.

Así, ante la desidia e indiferencia demostrada por el licenciado Chardón Dubós para atender los señalamientos de ODIN, este último nos solicita que se incaute la obra notarial y se tomen medidas disciplinarias contra el licenciado.

## II

Este Tribunal ha reiterado el compromiso de todo abogado de mantener y contribuir a un orden jurídico íntegro y eficaz.[2] Esta obligación se agudiza cuando nuestras órdenes se dan en el contexto de un

---

[2] In re Martínez Romero, 188 DPR 511, 514 (2013); In re Torres Trinidad, 183 DPR 371, 374 (2011); In re Janet Rivera Rosado, 180 DPR 698 (2011); In re Prieto Rivera, 180 DPR 692 (2011).

procedimiento disciplinario.[3] Así, todo abogado tiene la obligación de atender y cumplir diligentemente con los requerimientos y órdenes de este Tribunal relativos a su conducta profesional.[4] El Canon 9 del Código de Ética Profesional[5] dispone que todo "abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto". Si un abogado no cumple con las órdenes de este Tribunal demuestra menosprecio hacia nuestra autoridad e infringe el Canon 9, *supra*.[6]

Por lo tanto, los abogados tienen una obligación **inexcusable** de responder diligentemente a nuestros requerimientos, así como a los de la ODIN y del Procurador General.[7] La desatención a los requerimientos de la ODIN y del Procurador General tiene el mismo efecto que cuando se desatiende una orden emitida por este Tribunal.[8] Por ello, ignorar los requerimientos del Procurador General y la ODIN constituye por sí mismo una

---

[3] In re Ponce Ponce, res. el 6 de marzo de 2014, 2014 TSPR 42, 190 DPR __ (2014); In re Rosario Martínez, 184 DPR 494, 498 (2012).

[4] In re Guerrero Ledesma, res. el 10 de febrero de 2014, 2014 TSPR 50, 190 DPR ___ (2014); In re Irizarry Colón, res. el 10 de diciembre de 2013, 2013 TSPR 145, 189 DPR ___ (2013); In re Fiel Martínez, 180 DPR 426, 430 (2010).

[5] 4 LPRA Ap. IX C. 9

[6] In re Martínez Romero, supra, págs. 514-515; In re Cirino López, 184 DPR Ap. (2012); In re Fidalgo Córdova, 183 DPR 217, 222 (2011).

[7] In re Martínez Romero, supra, pág. 515; In re Arroyo Rivera, 182 DPR 732, 736 (2011); In re Montalvo Guzmán, 169 DPR 847 (2007); In re Moreno Franco, 166 DPR 787 (2006); In re Rivera Irizarry, 155 DPR 687 (2001).

[8] In re Ponce Ponce, supra; In re Miranda Gutiérrez, 188 DPR 745, 747 (2013); In re Ortiz Álvarez, 163 DPR 245, 249 (2004).

falta ética que conlleva la imposición de sanciones disciplinarias severas.[9]

Así las cosas, hemos expresado que independientemente de los méritos de las quejas presentadas en contra de un abogado, este tiene que responder prontamente a nuestros requerimientos. [10] Una vez el abogado incumple con los deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria.[11] A tenor con esta doctrina, hemos expresado que procede la suspensión indefinida e inmediata de la abogacía y la notaría cuando un abogado ignora los requerimientos de la ODIN, del Procurador General y de este Tribunal.[12]

## III

Desgraciadamente, como pudimos observar el licenciado Chardón Dubós incurrió en un **patrón** de conducta contraria a sus deberes como abogado y notario. El licenciado reiteradamente hizo caso omiso e incumplió con su deber de responder oportunamente a los

---

[9] Íd.

[10] In re Martínez Romero, supra; In re Torres Trinidad, supra; In re Otero Encarnación, 179 DPR 827 (2010); In re Rodríguez Mena, 126 DPR 205 (1990).

[11] In re Martínez Romero, supra; In re Arroyo Rivera, supra; In re Montalvo Guzmán, supra.

[12] In re Martínez Romero, supra ; In re Montes Díaz, 184 DPR 90, 94 (2011); In re Torres Rodríguez, 163 DPR 144, 148 (2004).

requerimientos tanto de la ODIN, del Procurador General y de este Tribunal.

Esta actitud de indiferencia y desatención que el licenciado ha mostrado nos fuerzan a decretar la suspensión inmediata e indefinidamente del ejercicio de la abogacía y de la notaría. Esto, con el apercibimiento de que no estaremos dispuestos a decretar su reinstalación hasta que cumpla con todos los señalamientos de la ODIN, del Procurador General y de nuestras resoluciones.

## IV

Por los fundamentos antes expuestos, se ordena la suspensión inmediata e indefinida del Lcdo. Frederic Chardón Dubós de la práctica de la abogacía y de la notaría. Además, se ordena el archivo administrativo de las quejas números **AB-2010-0264** y **AB-2013-0158** hasta tanto el letrado solicite la reinstalación al ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos, y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que informar oportunamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el cual tenga algún caso pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de

treinta días contados a partir de la notificación de la presente opinión *Per curiam* y Sentencia.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Chardón Dubós y entregarlos al Director de la ODIN para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

In Re:

Frederic Chardón Dubós          **AB-2010-0264**          Conducta
                                **AB-2013-0158**          Profesional

**SENTENCIA**

San Juan, Puerto Rico, a 30 de junio de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se suspende inmediata e indefinidamente al Lcdo. Frederic Chardón Dubós del ejercicio de la abogacía y la notaría. Además, se ordena el archivo administrativo de las quejas **AB-2010-0264** y **AB-2013-0158** hasta tanto el letrado solicite la reinstalación al ejercicio de la abogacía.

Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos, y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que informar oportunamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el cual tenga algún caso pendiente. Deberá acreditar

y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta días contados a partir de la notificación de la presente opinión *Per Curiam* y Sentencia.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Chardón Dubós y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez, no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo